Carl SPRING, Plaintiff.

v.

WASHINGTON GLASS COMPANY,
Defendant.

Civ. A. No. 14303.

United States District Court
W. D. Pennsylvania.

May 29, 1957.

Anthony J. Martin, Samuel Krimsley, Pittsburgh, Pa., for plaintiff.

Henry C. Herchenroether, Jr., Pittsburgh, Pa., for defendant.

MARSH, District Judge.

Carl Spring brought this action against Washington Glass Company, his former employer, under § 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), to recover unpaid overtime compensation, liquidated damages and attorney's fees. After trial and consideration of the requests and briefs of the parties, the court makes the following

### Findings of Fact

1. Washington Glass Company is a corporation organized and doing business in the Commonwealth of Pennsylvania, which operates a glass container manufacturing establishment in the City of Washington, Washington County, Pennsylvania, and its product is sold and distributed in interstate commerce.

2. During a period which includes the period beginning with February 10, 1954, and ending September 11, 1955, plaintiff, Carl Spring, was employed by the defendant as a hot-end or shift foreman, with the primary duty of managing a customarily recognized department or subdivision of defendant's plant known as the Production or "Hot-End" Department during the shift assigned to him.

3. The defendant, during the aforesaid period, operated its plant twenty-four hours per day in three shifts of eight hours each. Its foremen were expected to work any time, e. g., when needed on extra shifts, as substitutes for sick personnel, and in case of machinery breakdown.

4. Plaintiff was employed as a shift foreman under the terms of an oral contract providing for payment of a specified weekly salary for a workweek of unspecified hours.

5. During the period in question, from February 10, 1954 to August 29, 1954, the plaintiff received a salary of $93.50 per week, and from August 29, 1954 to September 11, 1955, $98.00 per week.

6. Pursuant to an agreement, production bonus payments ranging from $0.84 to $7.39 per week were regularly made by defendant to plaintiff during the period involved. These production bonus payments were not made at the sole discretion of defendant, but plaintiff was entitled thereto, weekly, pursuant to the terms of the bonus agreement. Other sums of money and property were presented by defendant to plaintiff at Christmas and on other special occasions as gifts.

7. The plaintiff customarily and regularly supervised 7 or 8 employees in the Production Department, on an 8-hour shift, for 40 hours per week, producing defendant's products. It was also his duty to check and keep four automatic production machines running normally. In this connection it was his responsibility to make or supervise the making of all necessary adjustments or repairs to said machines in the event of a breakdown or defective production during his shift, and to see that the heating devices were maintained at the proper degree of temperature.

8. During said period, plaintiff had the authority to discipline employees under his supervision including authority to discharge them for cause, said action being subject to reversal only if it was found to be contrary to the collective bargaining agreement covering said employees; his suggestions and recommendations as to hiring other employees were requested and given particular weight by his superiors. The final authority as to whether a person was to be hired or an employee was to be fired was vested in the plant manager.

9. Plaintiff was under the direct supervision of a plant manager and a plant superintendent or an assistant plant superintendent.

10. No records for the period in question were offered in evidence by either plaintiff or defendant from which could be calculated the number of hours worked by plaintiff in any workweek doing work which was not directly and closely related to executive work referred to in Regulation 541.1(a), (b), (c), (d).[1]

11. In respect to condition (e) of the Regulation,[2] the defendant failed to

---

1. Regulation 541.1 of the Wage and Hour Administrator, 1949 ed., Code of Federal Regulations, Title 29—Labor, Chapter V, subchapter A; 29 U.S.C.A.App. § 541.1.

2. Ibid.

prove that plaintiff worked less than 20% of the hours he worked during the workweeks involved in activities which were not directly and closely related to the performance of executive work.

12. Plaintiff did not customarily and regularly exercise the discretionary powers referred to in condition (d) of the Regulation.[3]

13. According to the stipulation of counsel, plaintiff worked a number of hours in excess of 40 hours per week in each of the weeks shown in the stipulation, or a total of 261 overtime hours, and was paid the salary and bonus for each week as shown in said stipulation.

14. Defendant failed to pay full compensation to plaintiff for the overtime hours he worked for the benefit of defendant.

15. The defendant's failure to pay overtime compensation to the plaintiff was in good faith and was based upon reasonable grounds for belief that the plaintiff was not entitled to overtime compensation.

16. The defendant's failure to pay overtime compensation to plaintiff was not in good faith in reliance on any administrative ruling, approval or interpretation of the Administrator of the Wage and Hour Division of the Department of Labor or his counsel.

### Discussion

Section 7 of the Fair Labor Standards Act, 29 U.S.C.A. § 207, provides:

"(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The defendant admits that it was engaged in the production of goods for commerce, but contends that the plaintiff was an exempt executive employee as that term is defined and delimited in § 13(a) of the Fair Labor Standards Act, 29 U.S.C.A. § 213, and Regulation 541.1.[4] This Regulation in its pertinent parts is as follows:

"§ 541.1 *Executive.* The term 'employee employed in a bona fide executive * * * capacity' in section 13(a)(1) of the act shall mean any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided,* * * *; and

"(f) Who is compensated for his services on a salary basis at a rate of not less than $55 per week * * * exclusive of board, lodging, or other facilities:

"Provided, * * *.""

3. Ibid.

4. Ibid.

The defendant does not dispute the decisions which hold that the conditions defining and delimiting an executive employee are conjunctive, and that an employer who contends that an employee is an exempt executive employee has the burden of proving the existence of all the conditions. Walling v. General Industries Co., 1947, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088; Rothman v. Publicker Industries, Inc., 3 Cir., 1953, 201 F.2d 618; Pugh v. Lindsay, 4 Cir., 1953, 206 F.2d 43; Cintron Rivera v. Bull Insular Line, 1 Cir., 1947, 164 F.2d 88. We think that the defendant has met all of the conditions except (d) and (e).

Although we find that the plaintiff's primary duty was to manage the Production or Hot-End Department while working with his shift, and customarily and regularly directed the work of 7 or 8 employees therein, Walling v. General Industries Co., supra, and had authority to make recommendations as to hiring or firing which were given particular weight, Nadeau v. Henry Disston & Sons, Inc., D.C.E.D.Pa.1946, 65 F.Supp. 849, it is certain that he also was primarily responsible for the proper mechanical functioning of the automatic machines which produced the defendant's glass products. Plaintiff was expected to make the adjustments and repairs, change molds, blanks and other parts in the machinery from time to time, and maintain a steady production rate. He was required to see that these adjustments and replacements were made promptly and correctly. Plaintiff testified that he himself made substantially all of the repairs and adjustments on his shift with occasional help from an operator of the production machinery. His testimony in this respect was not denied.

Plaintiff estimated that 40% of his time was spent in performing mechanical labor, such as making repairs and adjustments to the machinery and in relieving the four machine operators of their duty of tending and watching the machines when each of them went for lunch.[5] Plaintiff's estimate is probably insufficient to establish the percentage if the burden of proof was upon him; it was partially based upon what he had heard from an investigator to whom he had made a complaint.[6] The work records which plaintiff kept for six weeks during the critical period were not offered in evidence, and the records which he kept for five days prior to the period in suit[7] afford no insight into the actual percentage of time spent in mechanical labor and relief work.

On the other hand, the defendant failed to meet its burden of showing that plaintiff did not devote in excess of 20% of the hours he worked in the workweek to activities which were not directly and closely related to the performance of executive work. It had never kept a time record of plaintiff's activities in this respect. Another foreman and plant manager estimated such activities would be less than 20%, but their estimates were not based on observation of plaintiff's activities. Defendant failed to call any of its employees who actually worked with plaintiff during the period involved or who otherwise had personal knowledge of the time he spent in performing mechanical labor and relief work. The usual inference arises that had it called these available witnesses, their testimony would have been adverse to defendant. In Pugh v. Lindsay, supra, cited by defendant, the employer presented testimony of two employees who from personal observation were able to estimate the time the plaintiff had spent in performing mechanical work.

With respect to condition (d) of the Regulation, the defendant argues that plaintiff continually exercised discretionary powers in checking temperature gauges and in changing molds, blanks, and other parts of the machinery; that his decisions to make these replacements were made when he found

5. Testimony, p. 31.

6. See Testimony, pp. 42, 43, 73, 74, 79, 80.

7. The five days referred to were in October, 1953 (defendant's Exhibit 1).

that defects were appearing in the finished glassware. But this kind of discretion is that normally exercised by any mechanic. The discretion referred to in condition (d) was intended, we think, to refer to that discretion normally reposed in an executive as distinguished from a mechanic. Plaintiff had no discretion to plan the work or technique to be used; he could not change or fix the type of product, or control the placement or management of 'employees' functions, or stop production except to make repairs. These decisions were made by the plant manager, superintendents, and the glass technology or chemistry departments. We do not interpret "discretion" as used in condition (d) to include that type of thought or function which is involved in the normal decisions of a mechanic. Moreover, if plaintiff had any executive discretionary powers, they do not appear to have been customarily or regularly exercised.

■ Defendant from the inception of its operation of this plant had reasonable grounds for believing that its hot-end foremen were executive employees. The testimony reveals a borderline case, and we think defendant's failure to pay plaintiff overtime compensation was in good faith and, therefore, it should not be liable for liquidated damages pursuant to § 11 of the Portal-to-Portal Pay. Act, § 260, 29 U.S.C.A. See General Electric Co. v. Porter, 9 Cir., 1953, 208 F.2d 805, 44 A.L.R.2d 854. That defendant had reasonable grounds for so believing is fortified by a letter[8] which it received from an Investigation Supervisor of the Wage and Hour Division, under date of June 24, 1954, which contained a finding to the effect that for at least a year prior to the date of the letter, the hot-end foremen were exempt employees.

■ Defendant in its supplemental brief somewhat tardily contends that § 10 of the Portal-to-Portal Pay Act, § 259, 29 U.S.C.A.,[9] bars all overtime payment except for the 23 hours overtime preceding June 24, 1954, the date of the aforesaid letter. It claims it relied on the favorable finding contained in this letter in refusing to pay plaintiff overtime during the balance of the period involved in this suit.

There was no evidence that defendant relied on this finding in its refusal to pay overtime to plaintiff. Indeed to the contrary, the evidence indicates that defendant had always taken the position that its hot-end foremen were exempt executive employees, and that their duties had not changed since the inception of its plant operations.

In addition, the Supervisor's letter contained a finding that for the first one and one-half years of the plant operation, the foremen were not exempt "in that they participated in general repair work to such an extent as to defeat the 20% non-exempt tolerance clause." It appears from the letter that

8. Defendant's Exhibit 3.

9. "(a) In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

"(b) The agency referred to in subsection (a) of this section shall be—

"(1) in the case of the Fair Labor Standards Act of 1938, as amended—the Administrator of the Wage and Hour Division of the Department of Labor; * * *."

318

defendant did not accept the latter finding; but, of course, it agreed with the favorable finding which coincided with its pre-existing views. The letter plainly indicates that both the favorable and unfavorable findings were based upon the percentage of non-exempt work done by the foremen. Thus defendant could not in good faith rely on the favorable finding except as the particularity of the underlying facts concerning the extent of plaintiff's non-exempt work would continue to justify it.

■ This letter indicates that the Division investigated the facts concerning plaintiff's work during two periods of time and interpreted them in the light of the Regulation.[10] The facts relied on by the Supervisor in making his findings are not before the court. This is not the type of interpretation contemplated by § 10. We think that this section refers to " 'an interpretation of the law with reference to (a set of facts of general applicability)' ". Giannini v. Standard Oil Company, D.C.N.D. Ind.1955, 130 F.Supp. 740, 751; Burke v. Mesta Machine Co., D.C.W.D.Pa.1948, 79 F.Supp. 588, 610.

In Jenner v. 320 N. 13th St. Co., decided by Judge McGranery of the United States District Court for the Eastern District of Pennsylvania, and reported in Volume 18 C.C.H. Labor Cases, ¶65784, it was held that a "ruling" by a Wage and Hour Division Supervisor that a certain employee was exempt, which "ruling" was later "codified" in writing by the Regional Attorney, is not the type of administrative ruling contemplated by § 10 as a basis for a good faith defense.

In a statement by the Administrator of the Wage and Hour Division relating to the Portal-to-Portal Pay Act, 29 C.F. R. § 790.19(c), 12 Fed.Reg. 7655; 3 C. C.H.Labor Law Reporter, 4th ed., ¶24116.19(c), it was said that the administrative ruling relied upon must be:

"* * * actually that of the authority vested with power to issue or adopt regulations, orders, rulings, approvals, interpretations, administrative practices or enforcement policies of a final nature as the official act or policy of the agency. *Statements made by other officials or employees are not regulations, orders, rulings, approvals, interpretations, administrative practices or enforcement policies of the agency within the meaning of sections 9 and 10.*" (Emphasis supplied.)

Defendant did not request a ruling, approval or interpretation from the Administrator of the Wage and Hour Division nor did it receive any such ruling, approval or interpretation from him or his counsel or other person to whom the Administrator's authority had been delegated. We do not think that the favorable finding in the letter of the Supervisor is equivalent to a ruling, approval or interpretation authorized by the Administrator as is contemplated by § 10 of the Act.

Accordingly, it is this court's opinion that the defense of "good faith" under § 10 of the Portal-to-Portal Pay Act has not been made out in this case. If perchance we are in error, we would find against defendant on this issue, because instead of relying in good faith on an administrative ruling in refusing to pay plaintiff overtime, it actually relied on the advice of its counsel and its unalterable conviction, maintained from the inception of operations, that its hot-end foremen, including plaintiff, were executive employees.

■ The parties have agreed that the formula prescribed in the case of Overnight Motor Transportation Co., Inc., v. Missel, 1942, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, should be applied here in determining the overtime compensation due the plaintiff for the overtime hours worked by him. The court agrees with this conclusion since plaintiff was employed at a fixed salary per week to work variable or fluctuating hours. We also think that the production bonus paid him weekly is to be added to

10. Supra, footnote 1.

the week's salary and the resulting sum is then to be divided by the total hours worked for that week. See 29 U.S.C.A. § 207(d) (3); Walling v. Harnischfeger Corp., 1945, 325 U.S. 427, 65 S.Ct. 1250, 89 L.Ed. 1711; McComb v. Shepard Niles Crane & Hoist Corp., 2 Cir., 1948, 171 F.2d 69, 70–71; Burke v. Mesta Machine Co., D.C.W.D.Pa.1948, 79 F.Supp. 588; Interpretive Bulletin of the Wage and Hour Administrator, 29 U.S.C.App. § 7786(b). But see, Walling v. Stone, 7 Cir., 1942, 131 F.2d 461.

### Conclusions of Law

1. This court has jurisdiction of the subject matter and of the parties to this action pursuant to the provisions of § 16 of the Fair Labor Standards Act of 1938, as amended.

2. During the period of time in issue in this case, plaintiff was not a supervising executive employee of the defendant as such term is defined and delimited by the conditions contained in Regulation 541.1 of the Wage and Hour Administrator of the United States Department of Labor[11] and as stated in Section 13(a) of the Fair Labor Standards Act of 1938, as amended.

3. The production bonus payments to plaintiff should be included in the overtime rate computations.

4. The gifts presented to plaintiff on occasion should not be included in the overtime rate computations.

5. Plaintiff is entitled to overtime compensation for the hours worked each week, in excess of forty, in the sum of $264.60.

6. The plaintiff is not entitled to liquidated damages in any amount.

7. The defendant did not in good faith fail to pay plaintiff overtime compensation in reliance on an administrative ruling or approval which would bar recovery under § 10 of the Portal-to-Portal Pay Act, 29 U.S.C.A. § 259.

11. Supra, footnote 1.