**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Oscar MILLER, Contractor and Oscar Miller, Defendants.**

**Civ. No. 1416.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Jan. 24, 1964.

Beverley R. Worrell, Regional Atty. U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Thomas D. Bunn, Raleigh, N. C., for defendants.

LARKINS, District Judge:

This action is brought to enjoin defendants from violating the provisions of Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.), hereinafter referred to as the Act, and to restrain defendants from withholding payment of minimum wage and overtime

compensation alleged to be due certain of their employees under the Act.

The cause was heard by the court, sitting without a jury, at Wilson, North Carolina, on September 10, 1963. Before the trial the parties entered into numerous stipulations. There are only three areas of disagreement between the parties which the court must determine:

    (a) Whether employees Deese and Heath qualify as exempt employees within the provisions of the Act.

    (b) Whether employee Taylor is due unpaid minimum wages and overtime compensation.

    (c) Whether a permanent injunction should issue.

Having carefully considered the pleadings, and having weighed the evidence elicited from the witnesses and the stipulations, and considering arguments of counsel and briefs submitted by the parties, the court makes the following

### FINDINGS OF FACTS

1. Defendant Oscar Miller, Contractor, is a corporation existing under North Carolina law and having its principal place of business in Raleigh, North Carolina. The corporation is engaged in paving, constructing and maintaining roads and highways. The parties have stipulated that the contractor is engaged in commerce within the meaning of the Act.

2. The defendant Oscar Miller is a resident of Raleigh, North Carolina and is President of Oscar Miller, Contractor, and has actively managed supervised and directed the business affairs and operations of the corporation in relation to its employees.

3. In 1960, Oscar Miller, Contractor, was investigated by the Department of Labor and violations of the Act were found to exist. Mr. Cowen, the investigator, discussed these violations with Oscar Miller. He left with Miller certain publications from the Department of Labor in an attempt to aid the corporation in establishing a satisfactory record-keeping method in compliance with the Act. In an effort to alleviate these violations, the defendants' accountants initiated a new plan or method of keeping records on their employees' time. The Department contends that this method was fabricated by the defendants and does not comply with the provisions of the Act.

4. Defendants employed James Taylor as an office employee from July 30, 1962 to, on or about, August 10, 1962. During this period he worked regularly an average of 44–45 hours per week. He received $61.53 as a straight weekly salary. On or about August 10, 1962 to November 3, 1962, Taylor worked regularly in the scale-house on an average of 65 hours per week. He received the same straight salary.

The difference between the wages actually paid to Taylor and the wages he would have received had he been paid a minimum wage of $1.15 per hour and overtime compensation at not less than one and one-half times his regular rate of pay for hours in excess of 40 per week is $239.32, covering his period of employment from July 30, 1962 to November 3, 1962.

5. Walter L. Heath was employed as a shop foreman in defendants' repair shop. He regularly supervised one employee and devoted about half of his time to manual duties in the repair and maintenance of motor vehicles. Occasionally two or more men worked under Heath's supervision, but defendants kept no record of such occasions. Heath was a working foreman.

6. James L. Deese was employed as plant supervisor for approximately six months. He helped in razing an old asphalt plant and erecting a new plant. When Deese operated the asphalt plant he normally had one helper, but there were times when he had more than one helper. Defendants have no records indicating this however. Deese performed many manual duties in his work.

### CONCLUSIONS OF LAW

When the employer claims an exemption to the Act he has the strict bur-

den of proving that each condition of the exemption is clearly met since exemptions are narrowly construed against the employer. O'Meara-Sterling v. Mitchell, 299 F.2d 401 (5th C.C.A., 1962); A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945).

■ In attempting to establish the occupations of Deese and Heath as exemptions within the Act, defendants contend that these employees replaced men who held supervisory positions. But the court is not concerned with titles of employment or with the duties of the men who preceded Deese and Heath. What is significant is the work performed by these two employees. The defendants have not carried their burden of proof in showing that each condition of the exemption has been met.

The evidence sufficiently shows that Deese and Heath usually had only one man under their individual supervision. At irregular intervals they had two or more workers under their supervision, but that was not the norm. The testimony of these men and their fellow-workers clearly establishes that Deese and Heath devoted more than twenty percent (20%) of their working hours to activities not closely related to managing the business or department, directing the work of two or more employees, and exercising discretionary powers. Almost half of Heath's occupation was spent in repairing and maintaining motor vehicles. Deese's affidavit indicates that he worked consistently with his hands, operating a crane and running a bulldozer. It is his contention that he possessed no discretionary power, that he could not hire or fire personnel and that his recommendations to that effect were never followed.

Defendants have failed to show that Deese or Heath devoted less than twenty percent (20%) of their working hours to activities that were non-supervisory and of a nature similar to that performed by employees working under him. Mitchell v. Agricultural Aluminum Products, Inc., 161 F.Supp. 22 (W.D.S.C.1958); Spring v. Washington Glass Company, 153 F. Supp. 312 (W.D.Pa.1957). They have not shown sufficiently that either one of these employees regularly supervised two or more employees. Neither have they shown that either of these men regularly exercised discretionary powers. The defendants were compelled to meet each of the six conditions as to both employees. This they have not accomplished. See the Administrator's interpretative bulletin on executive exemptions. (Title 29, Code of Federal Regulations § 541.115). Employees Deese and Heath do not qualify as exemptions within the provisions of the Act.

■ The periods of employment and wages paid to James Taylor are not in dispute. Only the hours he worked per week are.

Taylor's testimony as corroborated by witness Sain indicates that he worked as an office employee on an average of 44½ hours per week. The evidence is sufficient to show that when Taylor was transferred to work in the scale-house he averaged approximately 65 hours per week.

It is well settled that where an employer has failed to record the hours worked by an employee covered under the Act, and plaintiff produces evidence showing that an employee has worked hours for which he was not properly compensated, the burden of proof shifts to the employer to show the exact hours worked by the employee, or to negative the reasonableness of the inferences raised by plaintiff's evidence. Anderson v. Mt. Clemens Pottery Company, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); Mitchell v. Riley, 296 F.2d 614 (5th C.C.A., 1961). Here the employer has been unable to show the exact hours worked by employee Taylor or to negative the reasonableness of the inferences raised by the Secretary. Thus, James Taylor is due $239.32 in back wages and overtime compensation.

■■ An injunction in cases of this kind does not follow as a matter of course after a finding of non-compliance and the existence of coverage by the Act. The issuance of an injunction is discre-

tionary with the trial judge. Mitchell v. Hodges Contracting Company, 238 F.2d 380 (5th C.C.A., 1956); Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959); Capitol Tomato Company v. Goldberg, 308 F.2d 401 (5th C.C.A., 1962). However, as was pointed out by the court in Goldberg v. Cockrell, 303 F.2d 811, at page 813 (5th C.C.A., 1962),

"That discretion, however, is subject to certain firm limitations. Some of the factors to be considered are 'the employer's previous actions of noncompliance or litigation, the moral and business responsibility of the employer, the extent to which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contritions under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance.' "

In this connection see also Goldberg v. Nello L. Teer Company, 208 F.Supp. 552 (M.D.N.C.1962).

The granting or denying of an injunction depends upon the facts of the case before the court. The Secretary has found, and the evidence supports him, that defendants have violated the Act after they had been told that violations existed. But the second violations occurred in an attempt to correct the errors which were pointed out by the Secretary in the beginning. The Labor Investigator had given Miller publications to assist his corporation in setting up adequate time and record-keeping methods. Miller's accountants initiated a method in an effort to comply with the Secretarys' requests. Unfortunately, this record-keeping method was not within the provisions of the Act and this suit ensued.

The Secretary contends that the method employed by the defendants' accountants was fictitious and was an empty gesture of compliance with the Act, but the record does not substantiate that view. Miller and his employees have been extremely co-operative and honest with the Department of Labor. In good faith they established a record-keeping system which they thought would be acceptable to the Secretary and in accord with the Secretary's statements and directions. The employer has not flaunted his violations in contempt of the Department nor has he deliberately caused a repetition of the violations. His effort to comply was unsatisfactory. That is all. There is every indication that Miller will conform with the provisions of the Act. With full appreciation of the Secretary's position, this court does not feel that a permanent injunction is warranted by the facts of this case.

Through stipulations by the parties and findings of facts by the court, the following individuals are due from the defendants these amounts of compensation:

| Employees | Amount |
|---|---|
| Erwin J. Banks | $ 84.84 |
| Raymond Bowen | 355.06 |
| James E. Burnett | 319.30 |
| Linwood W. Coley | 500.70 |
| James L. Collins | 103.56 |
| James L. Deese | 361.81 |
| Pete Denton | 71.71 |
| Walter F. Heath | 242.29 |
| W. H. Johnson | 34.40 |
| Bert W. Kenyon, Jr. | 150.05 |
| Jere L. Morton | 736.83 |
| Glenn A. McDuffie | 63.71 |
| Sidney Raper | 77.17 |
| William J. Ray | 348.33 |
| G. S. Saunders | 686.04 |
| Thomas S. Sessoms | 219.10 |
| James Taylor | 239.32 |
| James D. Thornton | 38.30 |
| Jesse L. Wheeler | 84.34 |
| Total | $4,716.86 |

Therefore, it is ordered that the defendants are, jointly and severally, to deliver to the plaintiff a certified check for $4,716.86, the proceeds of which check the plaintiff shall distribute to the persons named above or to their estates

if that is necessary, and any money not so distributed by the plaintiff within a reasonable time, because of plaintiff's inability to locate the proper persons or because of such person's refusal to accept such money, shall be covered into the Treasury of the United States as miscellaneous receipts. The prayer for injunctive relief is denied.

It is further ordered that the costs in this action be, and they hereby are taxed against the defendants, for which execution may issue.

It is further ordered that the Clerk serve copies of this Order and Judgment upon all counsel of record and the defendant Oscar Miller.