**W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Plaintiff,**

v.

**HARTLEY'S, INC., Defendant.**

**Civ. No. 64–426.**

United States District Court
S. D. Florida.

Sept. 3, 1965.

[redacted]

James H. Woodson, Atty., Department of Labor, Atlanta, Ga., for plaintiff.

Alan A. Bruckner, Miami, Fla., for defendant.

DYER, Chief Judge.

In this action the Secretary of Labor seeks an injunction against the defendant to preclude further violations of the minimum wage, overtime and record keeping provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C.A. § 201 et seq.) and an order restraining the withholding of minimum wage and overtime compensation due certain of defendant's employees.

Defendant, Hartley's, Inc., operates four specialty stores at which are sold wearing apparel. In 1951 the defendant had one store on Flagler Street in Miami, Florida. An additional outlet was purchased in Fort Lauderdale, Florida, in 1957; a third outlet was purchased in 1960 located in the Northside Shopping Center in Miami; and a fourth outlet was purchased at the Dadeland Shopping Center in 1962. Defendant employs at all its locations a total of from 200 to 250 employees with employment peaks around Christmas and Easter.

The Flagler outlet contains approximately 40,000 square feet of floor space. The shipping and receiving room is on the third floor and occupies about 5,000 square feet. Incoming goods are deposited on the first floor at a freight entrance and are taken to the third floor by an elevator. They are unpacked, checked, marked, and counted and the count is recorded upon a receiving apron. From orders which the receiving manager has in his files, cost and retail prices are put on each item. The receiving apron then goes to the accounting office to be computed at cost and retail prices, and the cost is compared against the invoice price per payment. Also located on the third floor is an executive office and a general office. The shipping and receiving facility and the general office employees are the ones with whom this case is concerned.

The crew working in the shipping and receiving area consisted of one receiving manager, one employee handling shipping, and from two to three markers. These employees regularly shipped and received goods in substantial quantities between Miami, Florida, and points outside the State of Florida.

The office employees regularly performed billing, purchasing, inventory control, collections, bookkeeping, accounting, advertising, preparation of payrolls, and otherwise performed duties directly involved in interstate transactions.

After a shipping and receiving area was opened at Northside Shopping Center in June, 1963, about one-half of the goods for the Fort Lauderdale and Northside outlets came to the Flagler outlet and the remainder came to the Northside facility.

Although there are wholesalers in the Miami area dealing in wearing apparel, defendant does not make use of their services. When the defendant's buyers make purchases from the manufacturers, the buyers earmark and break down orders placed for each individual outlet and the manufacturer packs the orders in separate boxes and earmarks the orders for each individual outlet, but they

are received and processed as above described.

If certain merchandise does not sell or is slow in one outlet, it is transferred to another with a notation on a "transfer slip" which is used to keep the inventory records in order. Thus, the transfer slip is a bookkeeping entry to change the merchandise from one department or one outlet to another.

The defendant's contentions can be summarized as follows: (1) it was exempted with respect to the employees in question by virtue of the provisions contained in Section 13(a) (2) of the Act; (2) defendant complied, at least from June 29, 1962, through October, 1962, because of the enforcement policy of the plaintiff published as Interpretative Bulletin, Title 29, Part 779 CFR, Appendix; (3) there was insufficient evidence upon which to base a finding concerning employees Dobson, Langen, Mazarredo, and Sudhoff (the claims relating to Belanger, Crain and Greenberg having been dismissed at the close of the plaintiff's case); and (4) plaintiff is not entitled to injunctive relief because of defendant's past history in the light of its good faith attempt to comply and in complying with the provisions of the Act.

*Claimed Exemption under Section 13(a) (2)*

Section 13(a) (2) of the Act provides, in pertinent part, that Sections 6 and 7 (the minimum wage and overtime provisions of the Act)

"shall not apply with respect to
* * *

 *      *      *      *      *      *

(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located,

 *      *      *      *      *      *

A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar vol-

ume of sales of goods or services (or both) is not for resale and is recognized as retail sales or services in the particular industry; * * *".

The plaintiff, relying on the landmark decision of Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393, rehearing denied, 362 U.S. 945, 80 S.Ct. 803, 4 L.Ed.2d 772 (1960), takes the position that, although it was stipulated at the trial that over 90 per cent of defendant's transactions were made within the state, the defendant offered no evidence with respect to "recognition" of any of its transactions in any industry. Plaintiff further contends that defendant's figures are unintelligible, and in any event fail to show that the inter-store transfer of goods was "not for resale", and therefore does not bring defendant's operations "plainly and unmistakably" within the exemption.

These contentions are passed over because dispositive of this case is the fact that the employees in question performed their interstate duties apart from any retail function. The central office and receiving room were physically separate from the other of defendant's operations. These facilities served all four of defendant's stores, and it was in and through these central facilities that the interstate transactions occurred.

The law was settled with A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945), and has been followed consistently.

"Here petitioner's warehouse and central office employees are performing wholesale duties in the very midst of the stream of interstate commerce. They constantly deal with both incoming and outgoing interstate shipments. Such tasks are completely unlike those pursued by employees of the small local retailers, who were the sole concern of Congress in Section 13(a) (2)." Id. at 497–498, 65 S.Ct. at 810.

The shipping and receiving functions are the determining criteria in this case. It is of no moment that the defendant

has no "warehouse" as such. While the defendant argues that an application of the proper rationale of Phillips would raise a Section 13(a)(2) exemption in this case, it is interesting to note the lack of reference, in its brief or argument, to Mitchell v. Sunshine Department Stores, Inc. et al., C.A.5, 1961, 292 F.2d 645, in which Chief Judge Tuttle, considering a factual situation almost akin to this,[1] pointed up with emphasis "the essential key to the problem" decided in Phillips:

> " 'In a realistic sense, therefore, most chain store organizations are merchandising institutions of a hybrid retail-wholesale nature. They possess the essential characteristics of both the retailer and the wholesaler. Their wholesale functions, which are integrated with but are physically distinct from their retail functions, are performed through their warehouses and central offices. *That fact is the essential key to the problem presented by this case. It serves to make clear the in-applicability of § 13(a)(2) to petitioner's warehouse and central office employees.*' " Id. at 647.

▆▆▆ There was no evidence that any of the office or receiving people performed any retail functions. Bearing in mind that the exemption is to be narrowly construed against the employer seeking to assert it, Arnold v. Ben Kanowsky, Inc., supra, defendant was not entitled to assert an exemption under Section 13(a)(2) of the Act.

### *Defendant's Reliance Upon Plaintiff's Enforcement Policy*

Defendant claims compliance in part because of Interpretative Bulletin, Title 29, Part 779, Appendix, published by the plaintiff. By virtue of the Portal-to-Portal Act[2] which provides in pertinent part:

> " * * * no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended * * * or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation * * *."

the Appendix to the Bulletin is such a written interpretation as may be relied upon.

It is unnecessary to consider whether defendant was "in conformity" with the Appendix because there was no showing at all when, if ever, defendant had or saw the bulletin or its appendix or that the defendant in any way at any time relied upon any part of it. These are essential operative facts which must be proved to establish the defense. As was said in Selby et al. v. J. A. Jones Const. Co., C.A.6, 1949, 175 F.2d 143:

> " * * * such claims are not barred unless appellee pleads and proves that its failure to pay 'was in good faith in conformity * * *.' " Id. at 145.

and further that

> " * * * there is no distinct showing that these regulations, rulings and approval were *relied upon* by it in the establishment of the pay policy * * *." Ibid. (Emphasis supplied.)

See also Spring v. Washington Glass Co., W.D.Pa.1957, 153 F.Supp. 312.

▆▆▆ An after the fact discovery of the Appendix and proof of its existence

---

1. Here, when the buyers made the purchases, the orders were placed for each outlet, while in Mitchell the inventory was received without being earmarked for any individual store. While this is *one* indicia to be considered, it is not decisive but must be weighed with the others, i.e., unpacking, checking, marking, counting, and the establishment of cost and retail prices on each item.

2. 29 U.S.C.A. § 259(a).

does not meet the requirement of the statute that defendant must *plead and prove* that the act complained of was in *good faith* in conformity with *and in reliance on* a written interpretation.

*Sufficiency of Evidence to Sustain Claims As to Employees Dobson, Langen, Mazarredo and Sudhoff*

■ With respect to these employees, the defendant maintained no record of the daily or weekly hours worked. They were paid fixed weekly wages without regard to the number of hours actually worked. Resort, therefore, must be had to other evidence to determine whether and to what extent they worked in excess of 40 hours per week so that a basis for calculation of the overtime rate can be made and the amount of overtime payments due to the employers established. Anderson et al. v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); Mitchell v. Riley, 5 Cir., 1961, 296 F.2d 614; Mitchell v. Mitchell Truck Line, Inc., 5 Cir. 1961, 286 F.2d 721; and Overnight Motor Transp. Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).

With respect to Ed Dobson, plaintiff's evidence was to the effect that he started to work at 8:00 a. m. and quit at 5:30 or 6:00 p. m.; that he worked two nights per week until 9:00 p. m. except during the Christmas Season when he worked until 10:00 p. m. He averaged his hours at 55 per week. Defendant reconstructed Dobson's weekly hours as follows: five days equal 40 hours, plus an additional six hours each week for night work and work on the sixth day. Defendant averaged Dobson's hours at 48½ per week. While defendant contends that the testimony was too vague to make an exact finding, it cannot be heard to complain that damages assessed against it lack the precision of measurement that would be possible had it kept such records. As a matter of just and reasonable inference, there was sufficient evidence to show that Dobson worked 50

hours per week. He was employed from December 25, 1962, to June 1, 1963, and paid a weekly wage of $100.

Employee, Joseph Langen, testified that his six-day work week averaged 50 to 52 hours. Defendant computed Langen's average work week at 40 to 41½ hours with an additional 4 hours per week during November, 1962. There was sufficient evidence to conclude that Langen averaged 50 hours per week. He was employed from August 25, 1962, to November 10, 1962, and paid a weekly wage of $100.

Employee, Octavio Mazarredo, testified that his hours of work were about the same during the period for which no record of his hours was kept as they were during the period for which there is a record of hours worked, i. e., 56 hours per week. There was no evidence to contradict this. He was employed from June 8, 1963, to December 28, 1963, at $90 per week, and from December 28, 1963, to February 14, 1964, at $98 per week.

With respect to employee, Ronald Sudhoff, the defendant did not seriously question the 47-hour work week estimated by the investigator. He was employed from June 29, 1962, to October 6, 1962, at a weekly wage of $100, and from October 13, 1962, to September 21, 1963, at $110 per week.

*Other Employees Affected*

Certain employees here involved were paid on a straight time hourly basis for all the hours they worked, and the defendant's records indicate the number of hours each worked, including those over 40 per work week. These employees, their respective periods of employment and the differences between the amounts paid by the defendant to them and the amounts they would have been paid if defendant had complied with the applicable minimum wage and overtime requirements of the Act during such times are as follows (also shown in this tabula-

tion is whether the minimum wage, overtime, or both, requirements were involved with respect to each such employee):

|  |  | Min. Wage | Overtime | Total |
|---|---|:---:|:---:|---:|
| I. S. Abood | 1–11–63 to 6–22–63 |  | x | $ 53.61 |
| Consuelo Careaga | 12–31–62 to 3–31–63 | x | x | 108.24 |
| H. M. Cohen | 12–23–62 to 4–13–63 |  | x | 32.82 |
| I. M. Cox | 6–29–62 to 1–25–64 | x | x | 486.78 |
| B. R. Cummings | 7–1–62 to 7–28–62 |  | x | 5.00 |
| Joe Dembowski | 6–29–62 to 9–21–63 |  | x | 145.08 |
| Doris Greene | 7–1–62 to 2–8–64 | x | x | 734.82 |
| A. M. Guas | 11–25–62 to 12–22–62 | x | x | 17.73 |
| J. M. Hartman | 1–27–63 to 4–13–63 |  | x | 5.47 |
| V. L. Holan | 6–29–62 to 8–3–63 |  | x | 43.41 |
| R. E. Jones | 6–29–62 to 1–19–63 |  | x | 80.86 |
| S. Kalem | 6–29–62 to 4–13–63 |  | x | 47.16 |
| Matamoros | 7–1–62 to 12–22–62 |  | x | 16.44 |
| M. J. McCollor | 7–28–63 to 1–25–64 |  | x | 28.54 |
| S. S. Newman | 5–5–63 to 7–27–63 |  | x | 5.78 |
| W. J. Pierce | 6–23–63 to 9–14–63 | x | x | 18.90 |
| G. C. Richards | 6–29–62 to 2–8–64 | x | x | 576.91 |
| N. Rodriguez | 11–25–62 to 7–27–63 |  | x | 52.49 |
| M. E. Rutledge | 9–7–63 to 2–8–64 | x | x | 94.76 |
| C. F. Sala | 11–25–62 to 2–3–64 |  | x | 77.26 |
| Alyce Smith | 12–9–62 to 12–22–62 | x |  | 5.89 |
| Joan Stein | 6–29–62 to 8–17–63 | x | x | 81.65 |
| E. Stern | 6–16–63 to 8–17–63 |  | x | 27.91 |
| R. F. Williams | 8–18–63 to 2–1–64 |  | x | 49.53 |
| R. D. Thompson | 12–1–63 to 12–28–63 | x | x | 39.82 |
| Octavio Mazarredo | 8–25–62 to 6–1–63 |  | x | 470.75 |
|  | Total |  |  | $3,307.62 |

### Injunctive Relief

Plaintiff presses for injunctive relief against the defendant. As to the defendant's claim of retail exemption, plaintiff asserts that defendant's familiarity with the Appendix to Bulletin should have alerted defendant that its employees were subject to the Act. This is a turn about argument from that made by the plaintiff to the affirmative defense under the Portal-to-Portal Act that defendant *did not rely* upon the Appendix.

At the conclusion of the investigation, defendant began to pay its employees according to plaintiff's interpretation of the Act even though defendant did not agree with that interpretation. Defendant continues to do so to date.

In December, 1963, defendant retained an attorney knowledgeable in labor law, and thereafter conferences were held with representatives of the plaintiff, the last as late as March 4, 1964. There were internal differences of opinion within plaintiff's own staff as to coverage, and although plaintiff's investigator claimed that defendant's assistant buyers were subject to the Act, it was subsequently determined that they were not.

Defendant's claimed exemption under Sec. 13(a) (2) was not far fetched —indeed it was on sufficient legal footing to make a fairly close issue. It cannot be said that the defendant committed a clear violation of the Act without valid excuse or explanation. On the con-

trary, the legal theory tendered by the defendant in justification was convincing that the violations were not of an intentional or wilful character, such as would justify the issuance of an injunction. Weighing the factors to be considered, as delineated in Goldberg v. Cockrell, 5 Cir., 1962, 303 F.2d 811, the prayer for injunction should be denied.

Plaintiff is entitled to an order restraining the withholding of minimum wage and overtime compensation due the employees in the amounts indicated or to be determined by arithmetical computation, i. e., the wages paid and the number of hours worked each workweek.

As to employees Belanger, Crain and Greenberg, plaintiff's claim for wages due them shall be dismissed.

Judgment in accordance with the foregoing to be settled and submitted within ten (10) days.