**W. Willard WIRTZ, Secretary of Labor**

**v.**

**The HARPER BUFFING MACHINE COMPANY et al.**

**Civ. No. 11303.**

United States District Court
D. Connecticut.

Jan. 24, 1968.

John B. Willard, pro se, and for John F. Harper and Harper Buffing Machine Co.

Charles Donahue, Solicitor of Labor, Edward G. Madden, Regional Attorney, James G. Johnston, Boston, Mass., for plaintiff.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

This is an action brought by the Secretary of Labor under § 17 of the Fair Labor Standards Act, 29 U.S.C. § 217, hereinafter called the Act, seeking an injunction against the continued withholding by defendants of overtime wages allegedly due to their employees and against any future violations of the overtime and record-keeping provisions of said Act, 29 U.S.C. §§ 215(a) (2) and (a) (5). Jurisdiction is conferred by § 17, 29 U.S.C. § 217. The case is here upon a stipulation of facts agreed to between the parties and incorporated into these findings of fact.

The defendant The Harper Buffing Machine Company is a corporation organized under and existing by virtue of the laws of the State of Connecticut and has its principal office and place of business at 316 Ellington Road, East Hartford, Connecticut, within the jurisdiction of this court and is engaged at that place of business in the design, assembly, sale and servicing of automatic finishing and buffing equipment, said equipment being regularly received and shipped in interstate commerce.

The defendant John F. Harper resides in Portland, Connecticut, within the jurisdiction of this court and is president and treasurer of the corporate defendant The Harper Buffing Machine Company and as such actively manages, supervises

and directs the business affairs and operations of said corporation.

The defendant John B. Willard resides in West Hartford, Connecticut, within the jurisdiction of this court and is secretary of the corporate defendant The Harper Buffing Machine Company and as such actively manages, supervises and directs the business affairs and operations of said corporation.

At all times pertinent to this action, the defendants, employers within the meaning of the Act, regularly engaged their employees (more specifically the employees as set forth in the Appendix to this opinion), in ordering, purchasing, receiving, handling, designing, producing, shipping and otherwise working on parts and equipment which are produced for interstate commerce and shipped and received in interstate commerce.

During the period February 25, 1964, through October 7, 1965, the above-mentioned employees were compensated on the basis of a weekly salary, said salary remaining constant regardless of the number of hours worked by the employees in the workweek.

The employees at times worked both more than and less than their scheduled 44 or 47½ hour weeks and were paid the same weekly salary.

During the period February 25, 1964, through October 7, 1965, the defendants employed the above-mentioned employees for workweeks longer than 40 hours without compensating them for their employment in excess of 40 hours per week at rates not less than one and one-half times the properly determined regular rate of pay.

During the period February 25, 1964, through October 7, 1965, the defendants failed to make, keep, and preserve records, in that the defendants failed to show and record the actual hours worked each day and each workweek, the regular rate of pay, the basis upon which wages are paid, the total straight time earnings for each workweek, and the total weekly overtime earnings for each workweek.

The defendants were apprised of the unpaid overtime compensation due to the employees on November 2, 1965, and since that date the defendants have continued to refuse to make payment of the unpaid overtime compensation to said employees.

It has been agreed between the parties that if overtime violations requiring relief are found, then the summary contained in the Appendix represents an acceptable computation of the amounts due and owing to each employee.

*Conclusions of Law and Opinion*

Two major issues are presented for resolution:

1. Did the defendants' practices prior to October 1965 constitute a violation of the overtime and record-keeping provisions of the Act?

2. Should an injunction issue (a) with regard to the wages due, and (b) with regard to future conduct by the defendants?

Before reaching these issues, a preliminary question of the propriety of this action under § 17 has been raised by the defendants. Defendants' counsel argues strenuously in his brief first that a § 17 action is essentially an equitable one and that the present case involving primarily a claim for back overtime wages is not an appropriate one for equity. Rather, that the proper course under the circumstances is an action under § 16. Second, it is his contention that even if otherwise appropriate there is no basis on the facts for a § 17 action seeking an injunction directed to future conduct since defendants' practices have been brought into conformity with the Act.

These arguments, however, are premised on a misunderstanding of the function and operation of § 17. A statutory authorization for an injunction under a given set of circumstances is not necessarily limited to the reach of common law equity to the defined subject matter. Arguments taken whole cloth from prior equity practice in a private controversy may not suit the statutory remedy that Congress has made avail-

able to effectuate a public policy. See Hecht Co. v. Bowles, 321 U.S. 321, 64 S. Ct. 587, 88 L.Ed. 754 (1944); Lenroot v. Interstate Bakeries Corp., 146 F.2d 325, 327 (8th Cir. 1945); Mitchell v. Pidcock, 299 F.2d 281 (5th Cir. 1962). Thus, defendants argue that a § 17 injunction should not issue unless no remedy at law can be proved sufficient. There is, however, nothing in the wording or in the history of the section to support such an argument.[1] Quite to the contrary, it is clear both from the wording and history of the section as amended in 1961 it was designed to provide an addition to the stock of remedies by which payment of overtime wages may be secured. 2 U.S.Code Cong. & Ad. News, 1658, 1713 (1961). Contrary to the defendants' argument, § 16 only empowers the Secretary of Labor to bring a suit for back wages if requested to do so by one of the aggrieved employees and then only if no issue of law is present in the case. 29 U.S.C. § 216 (c). That section also permits those employees to institute their own actions. The purpose behind the 1961 amendment to § 17 was to provide a method by which the Secretary could institute such a claim on his own initiative. Such a procedure was seen as not only filling a gap in the enforcement mechanism but also as a way of adding punch to investigations carried out by the department and by forestalling the likelihood of a large number of suits under § 16. 2 U.S.Code Cong. & Ad.News, 1658–59 (1961). To accommodate this purpose § 16 was changed to bar any employee suits from being instituted once a § 17 action had been begun by the Secretary.[2]

Given that view of the section's function, it is clear that there is no reason why such an injunction against withholding back wages could not be sought by the Secretary independent of or in the absence of any move for a continuing injunction against future conduct. Nothing in the wording of the section forbids such a reading and in fact several cases where that was the only relief given have been reported. Wirtz v. First State Abstract & Ins. Co., 362 F.2d 83 (8th Cir. 1966); Wirtz v. Hines Realty Co., 361 F.2d 321 (5th Cir. 1966) (per curiam); Burk Builders, Inc. v. Wirtz, 355 F.2d 451 (5th Cir. 1966) (per curiam); Wirtz v. Hartley's, Inc., 245 F. Supp. 101 (S.D.Fla.1965); Wirtz v. Miller, 226 F.Supp. 15 (E.D.N.Car.1964).

It is equally clear that the fact that defendants' practices have been brought into conformity with the Act would not necessarily bar the Secretary from obtaining an injunction ordering future compliance under § 17. Rather, such conformity at the time of trial would be one factor among many to be considered.[3]

Turning then to the merits, it is clear from the facts as reported in the stipulation that defendants were in violation of the overtime provisions of the Act prior to 1965.[4] The employees were hired for a fixed weekly salary and, with the possible exception of one, were never informed that that salary included compensation at one and a half times the regular rate of overtime work. It is also stipulated that the employees worked both longer and shorter weeks than those to which they originally agreed without

1. For a discussion of the history of the section see the opinion of Circuit Judge Anderson in Wirtz v. Jones, 340 F.2d 901, 903–04 (5th Cir. 1965).

2. Defendants have also argued that the suit is barred by the two year statute of limitations in § 6 of the Portal to Portal Act of 1947, 61 Stat. 84, 29 U.S.C. § 255, because no employee is named as a party plaintiff and written consent to become a party plaintiff is not on file

within two years after the cause of action arose. There is no merit to the argument which is also based on a confusion between § 16 and § 17 of the Fair Labor Standards Act similar to that discussed above. Wirtz v. Novinger's, Inc., 261 F.Supp. 698 (M.D.Pa.1966).

3. See discussion on issuance of an injunction going to future conduct below.

4. Defendants have conceded violating the record-keeping provision.

any change in compensation.[5] To support the contention that such an employment situation satisfied the § 7(e) exception to the general rule, the codification of the so-called Belo contract,[6] the defendants argue that the court should *imply* that the contract specified an hourly rate and additional compensation for overtime and that this was understood by the employees. This the courts have consistently refused to do. See Overnight Motor Transp. Co. v. Missel and its progeny, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). Such an implication gains no strength from the fact that after notice to the defendant corporation of the violation from the department, it has drawn up and had its employees sign a Belo-type agreement or that their rate of compensation has remained the same. The important objective is assurance that the employees and the employer are aware that overtime compensation in a specific amount is included in the contract. Nunn's Battery & Elec. Co. v. Goldberg, 298 F.2d 516, 520 (5th Cir. 1962). Unless both sides clearly understand this to be so, it cannot be said with any certainty that the purposes of the law in requiring additional pay for overtime work are being achieved. Cf. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682.

■ The second major question for decision is the appropriateness of injunctive relief. As far as the question is one of ordering that the overtime due to the employees no longer be withheld, there is no question but that such an order should enter. As has already been explained above, it cannot be said that once a violation is shown remedial relief to this extent is still discretionary. In any case, defendants offer no sound reason for refraining from the issuance of such an injunction. Merely labelling its violation as a "technical" one does not forward the discussion. What is implied by that contention is that the violation was not calculated. However, intent is not an element here. While lack of malicious motives may provide a reason for not imposing additional penalties beyond the compensation due, it does not excuse the defendant's failure to pay money determined to be due and owing to its employees or justify its own enrichment at their expense. See Wirtz v. Hartley's, Inc., 245 F.Supp. at 107.

■ Moreover, an order barring further withholding of overtime wages due issues primarily "to correct a continuing offense against the public interest" and not simply "to collect a debt owed by an employer to his employee." It "is simply a part of a reasonable and effective means which Congress, after trial and error, found it necessary to adopt to bring about a general compliance with § 15(a) (2)." Wirtz v. Jones, 340 F.2d at 904.

■ Whether the injunction should issue to bar future violations by defendant is much more a matter within the discretion of the court. Wirtz v. Atlas Roofing Mfg. Co., 377 F.2d 112 (5th Cir. 1967). Among the factors to be considered in the exercise of that discretion are:

"the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent to which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contritions under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance." Mitchell v. Hodges Contracting Co., 238 F. 2d 380, 381 (5th Cir. 1956); Goldberg v. Cockrell, 303 F.2d 811, 813 (5th Cir. 1962).

5. Shop employees were hired for a 47½ hour week, clerical employees for one of 44 hours. It is stipulated that the average week worked conformed to these figures.

6. Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942).

Thus, the fact that defendants have conformed their conduct to the requirements of the Act since receiving notice of their violations in October 1965 should be taken into account, as should their continued withholding of wages due employees since that time. It should be noted, however, that decisions in recent years have evidenced an increasing reluctance on the part of the courts to stay the issuance of an injunction of the sort at issue here merely on the basis of the employer's promises. Furthermore, the mere fact that the illegal practices have been remedied prior to trial does not prevent the issuance of an injunction, Wirtz v. Hardin & Co., 253 F.Supp. 579 (N.D.Ala. 1964), aff'd per curiam, 359 F.2d 792 (5th Cir. 1966), nor does the fact that the defendants have committed but "one unexplained offense." Goldberg v. Cockrell, 303 F.2d at 814.

 Finally, in determining whether to issue such an injunction, the light burden it would impose on the employer must be weighed against the heavy administrative and investigative responsibilities which non-issuance would place on the Department of Labor. As the Fifth Circuit Court of Appeals noted in Mitchell v. Pidcock, 299 F.2d at 287:

> "The injunction subjects the defendants to no penalty, to no hardship. It requires the defendants to do what the Act requires anyway—to comply with the law. True, it subjects them to correction by contempt proceedings. If this is a hardship, they may avoid it by respecting the law. If they choose to take their chances, they would in contempt proceedings still be able to raise questions of law and of good faith as freely as in the original suit for an injunction. We do not say or imply that injunctions should be issued freely, without regard for the facts, simply because it is the Government asking for the injunction. We say that the manifest difficulty of the Government's inspecting, investigating, and litigating every complaint of a violation weighs heavily in favor of enforcement by injunction—*after* the court has found an unquestionable violation of the Act."

An injunction should issue.

This constitutes the court's finding of facts and conclusions of law. An order is issued separately and contemporaneously herewith.

## APPENDIX
## SUMMARY OF WAGES DUE AND OWING TO EACH EMPLOYEE

| Name & Address | Period Covered | | Amounts Due |
|---|---|---|---|
| John Anstett<br>Wells Ave.<br>East Hampton, Conn. | 2/25/64 | 3/26/65 | $ 300.38 |
| William M. Braren<br>Crescent St.<br>East Hampton, Conn. | 2/25/64 | 10/ 7/65 | $ 78.21 |
| Raymond Brouillette<br>376 Thompsonville Rd.<br>Suffield, Conn. | 8/14/64 | 10/30/64 | $ 95.59 |
| Stuart Coleman<br>East Hampton, Conn. | 5/20/64 | 7/30/64 | $ 106.65 |
| Otis Dickinson<br>RFD #4 – Box 196<br>East Hampton, Conn. | 3/20/64 | 10/ 7/65 | $ 789.61 |

| Name & Address | Period Covered | | Amounts Due |
|---|---|---|---|
| Frank Dunham<br>Staeth Rd.<br>East Hampton, Conn. | 10/7/65 | | $ 9.48 |
| John M. Fiori<br>302 Ellington Rd.<br>East Hartford, Conn. | 2/25/64 | 10/ 7/65 | $ 423.72 |
| Frederick Hotchkiss<br>6 West Point Terrace<br>West Hartford, Conn. | 4/17/64 | 10/ 7/65 | $ 420.94 |
| John Krasnitski, Jr.<br>Abbey Rd.<br>East Hampton, Conn. | 4/ 2/65 | 8/13/65 | $ 107.44 |
| Charles E. Lavigne<br>149 Shunpike Rd.<br>Cromwell, Conn. | 9/10/65 | 10/ 7/65 | $ 30.04 |
| Benjamin T. Lord<br>45 Shetucket Ave.<br>Taftville, Conn. | 4/ 2/65 | 10/ 7/65 | $ 197.50 |
| Robert L. Lyman<br>RFD #2<br>Marlborough, Conn. | 2/25/64 | 10/ 7/65 | $ 895.67 |
| Charles Lee Mifflin<br>7 Bank St. Ext.<br>Portland, Conn. | 5/29/64 | 3/19/65 | $ 318.15 |
| Alphonso Ozimek<br>355 Town Rd.<br>Colchester, Conn. | 2/25/64 | 10/ 7/65 | $ 883.82 |
| Peter P. Perun<br>Mack Rd.<br>Middlefield, Conn. | 2/25/64 | 10/ 7/65 | $ 220.50 |
| John A. Race<br>RFD #2 – Box R-1<br>Durham, Conn. | 2/25/64 | 10/ 7/65 | $ 671.40 |
| Paul V. Roberts<br>Burrows Hill Rd.<br>Hebron, Conn. | 3/13/64 | 9/30/65 | $ 663.98 |
| Robert Shelton<br>8 Wells Ave.<br>East Hampton, Conn. | 2/25/64 | 4/23/64 | $ 66.40 |
| Robert Zwitzer<br>North St.<br>Hebron, Conn. | 5/22/64 | 10/ 7/65 | $ 599.70 |
| Shirley E. Tourtillotte<br>Roberts Rd.<br>Marlborough, Conn. | 11/ 6/64 | 10/ 7/65 | $ 375.56 |
| | | | $7244.65 |