**John T. DUNLOP, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**Wayne DAVIS, Defendant-Appellee.**

**No. 75–2338**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Dec. 24, 1975.

---

* Rule 18, 5 Cir.; See *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

William J. Kilberg, Sol. of Labor, Donald S. Shire, Assoc. Sol., Jacob I. Karro, U. S. Dept. of Labor, Washington, D. C., Beverley Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., Carin A. Clauss, Assoc. Sol., Washington, D. C., for plaintiff-appellant.

Murphy & Witcher, Michael L. Murphy, Bremen, Ga., for defendant-appellee.

Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

In the fall of 1971 an administrative investigation of appellee, Wayne Davis', business practices since June 30, 1969, was conducted by a compliance officer from the Wage and Hour Division of the Department of Labor. This investigation revealed that Davis, a paving contractor, was violating the compensation and record keeping provisions of the Fair Labor Standards Act (FLSA or the Act), Title 29, U.S.C., Section 201 et seq., and that back wages were owing to sixteen employees. Davis agreed to pay the back wages in the amounts found owing by the investigator, and in order to facilitate restitution to these employees the Department sent to him official receipt forms to be signed by the employees on receiving the amounts due them. The completed forms signed by the respective employees and by Davis were returned to the Department, indicating payment in full to each employee. Subsequently, the Department sent a questionnaire to each of the employees to ascertain whether they had received the back wages represented by Davis, on the official receipts, as having been paid. The responses of eight employees, indicating that they had not received any or all of the payment due them, led to a second investigation by a wage and hour investigator concerning whether Davis had submitted false back wage receipts to the Department.

As a result of this investigation the Secretary of Labor instituted this action in the court below under Section 17 of FLSA, Title 29, U.S.C., Section 217, against Davis to compel compliance with

the minimum wage, overtime, and record keeping requirements of that Act. The Secretary sought to have Davis permanently enjoined from violating Sections 15(a)(2) and 15(a)(5) of FLSA, Title 29, U.S.C., Sections 215(a)(2) and 215(a)(5), and restrained from withholding the payment of any minimum wages and overtime compensation found by the district court to be due his employees under the FLSA.

At trial Davis sought to explain his failure to pay the back wages due the eight employees by asserting that some of the employees had refused to take the money for which they had signed receipts, and that he had reduced the amount of money paid to other employees to off-set alleged debts owed by them to him or paid by him to third parties at their request or on their behalf. The district court found Davis' testimony concerning the refusal of certain employees to take the money for which they gave receipts was "vague, equivocal and evasive". Further, the court stated that there was "overall bad faith" on the part of Davis in endeavoring to avoid restitution, and that "the defendant engaged in a variety of tactics designed to avoid payment" to the employees.[1] With regard to Davis' allegations that he had set-off the debts of four employees against the back wages due them, and that by signing the receipts these employees had tacitly agreed to the deductions the district court found that argument "patently spurious" and that little credence could be given to Davis' unverified version of the transactions, in light of "the devious and decep-

tive conduct of the defendant".[2] Despite these findings the court below refused to grant the Secretary's prayer for a prospective injunction, and limited the injunction to requiring that Davis pay the back wages found due and owing to the eight employees. The Secretary appeals from the denial of a permanent injunction.

■■■ Although the question of whether an injunction should issue to restrain an employer from future FLSA violations is initially addressed to the discretion of the trial court, the exercise of that discretion is not unbridled. *Wirtz v. Atlas Roofing Manufacturing Co.*, 5 Cir. 1967, 377 F.2d 112; *Goldberg v. Cockrell*, 5 Cir. 1962, 303 F.2d 811. Since the FLSA itself provides for no administrative sanctions, the only remedy of the Secretary where an employer refuses voluntary compliance with the Act is resort to the judiciary for injunctive relief, and it is "no less important for the judiciary to use its injunctive power to effectuate the national policy expressed by Congress than for the executive branch to police the Act". *Wirtz v. Graham Transfer and Storage Co.*, 5 Cir. 1963, 322 F.2d 650, 653.

■■■ The effect of permanently enjoining from future violations of FLSA an employer found to have violated that Act in the past is to shift the "responsibility for compliance onto the employer's shoulders" and to lessen the responsibility of the Wage and Hour Division of investigating past violators to ascertain if they are in compliance with the provi-

---

1. The district court found:

   "Most of these workers, though bordering on illiteracy, were not afforded a reasonable opportunity to examine the papers. Few were actually told what the release form and check really were, and, in fact, some were *affirmatively misinformed* by the defendant as to the nature of the transaction. The instruments were presented to many of them reverse side up or folded over so as to further obscure their actual content. One receipt was dispatched by mail without an accompanying check to a former employee

   who signed it in the apparently misplaced reliance that the defendant would ultimately pay him the back wages shown due on the receipt. In summary, most of these employees were not aware of the true nature of the receipts and certainly did not intend by their signature to 'release' their legitimate claim to back wages." (Emphasis added).

2. In the case of the one employee found to have been in debt to Davis, the lower court found that those debts did not equal the amounts withheld from the back wages covered by the receipt.

sions of the Act.[3] *Goldberg v. Cockrell,* 5 Cir. 1962, 303 F.2d 811, 814. The issuance of a permanent injunction in FLSA cases does not subject an employer against whom its runs to a penalty or a hardship since it requires him to do "what the Act requires anyway—to comply with the law." *Mitchell v. Pidcock,* 5 Cir. 1962, 299 F.2d 281, 287. Because an injunction has an administratively beneficial effect in enforcing the FLSA, this court has not hesitated to reverse district courts for refusing to enjoin future violations. See *Shultz v. Salinas,* 5 Cir. 1969, 416 F.2d 412; *Mitchell v. Pidcock,* supra; *Mitchell v. Jax Beer Distributors,* 5 Cir. 1961, 290 F.2d 24; *Mitchell v. Hausman,* 5 Cir. 1958, 261 F.2d 778. In other cases where the facts have warranted prospective injunctions we have granted such relief but limited its duration. See, e. g., *Wirtz v. Atlas Roofing Manufacturing Co.,* supra.

We have held that the two factors properly to be considered in determining whether a permanent injunction should be granted are the previous conduct of the employer and the dependability of his promises for future compliance. *Shultz v. Salinas,* supra; *Wirtz v. Atlas Roofing Manufacturing Co.,* supra; *Mitchell v. Hausman,* supra. Despite findings of "overall bad faith" and "devious and deceptive conduct" on the part of Davis, the district court in applying the above factors held that a permanent injunction was not warranted in this case because Davis had ceased his violations following their discovery by the compliance officer and had not resumed them by the time of the trial. But current compliance with the requirements of FLSA is no bar to prospective injunctive relief, see *Hodgson v. Ricky Fashions, Inc.,* 5 Cir. 1970, 434 F.2d 1261, 1263; *Gulf King Shrimp Co. v. Wirtz,* 5 Cir. 1969, 407 F.2d 508, especially where compliance is achieved only by the direct scrutiny of enforcement authorities. *Opelika Royal Crown Bottling Co. v. Goldberg,* 5 Cir. 1962, 299 F.2d 37, 44; *Mitchell v. Hausman,* supra at 780; *Mitchell v. Hodges,* 5 Cir. 1956, 238 F.2d 380, 381. Also, assuming that Davis had ceased violating the Act after the initial investigation by the compliance officer, his attempts thereafter to avoid the payment of admittedly due back wages, his falsification of the receipts for those wages, and his misrepresentations to the Department do not demonstrate likelihood of future voluntary compliance on his part. We fail to find any indication in these circumstances, in light of Davis' proven practices and attitude, that violations will not be resumed in the future. *Lenroot v. Kemp,* 5 Cir. 1946, 153 F.2d 153, 157.

The district court's order denying permanent injunctive relief is reversed. This case is remanded with instructions to grant the Secretary's application for an injunction against future violations.

Reversed and remanded.

---

**3.** The burden on the Wage and Hour Division investigators is evident from the fact that in 1970 the coverage of the FLSA extended to over forty-six million employees and two million employers. *Hodgson v. Ricky Fashions,* 5 Cir. 1970, 434 F.2d 1261, 1263, n. 2. Further, the coverage of the Act was extended in 1974 to include 3.4 million state and local government employees. 1974 Amendments to the Fair Labor Standards Act, Pub. Law 93–259, 88 Stat. 55.