William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

The WACKENHUT CORPORATION, Defendant.

No. 85 Civ. 7850 (EW).

United States District Court, S.D. New York.

June 22, 1987.

Patricia M. Rodenhausen, Regional Solicitor of Labor, U.S. Dept. of Labor, New York City, for the Secretary of Labor; William G. Staton, of counsel.

Spengler, Carlson, Gubar, Brodsky & Frischling, New York City, for defendant; Adin C. Goldberg, Lawrence S. Hirsch, of counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

Defendant, The Wackenhut Corporation (Wackenhut), a Florida corporation in the business of providing security services, is sued by the Secretary of the Department of Labor for violating the minimum wage and overtime pay provisions of sections 6(a)(1), 7(a)(1), and 15(a)(2) of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq. The Secretary seeks a restitutionary injunction requiring repayment of back wages, liquidated damages, and an injunction against further violations. Wackenhut contends that the Secretary has failed to meet its burden of proof as to the alleged violations, that its good faith efforts to comply with the Act make liquidated damages inappropriate, and that its behavior does not warrant a prospective injunction.

### Findings of Fact

The instant case arises against a background of previous minimum wage and overtime pay investigations conducted by the Department of Labor (DOL). For approximately twenty years, John Guinness, a DOL compliance officer in Miami, Florida, has monitored Wackenhut's compliance with the FLSA. During that time, Guinness has had approximately 15 to 20 conversations with Wackenhut counsel and corporate officials to secure payment of back wages for employees; each time, Guinness received assurances that Wackenhut would comply in the future with the FLSA. In 1979, following an investigation in Orlando, Florida, Wackenhut entered into a written National Compliance Agreement with DOL, in which it promised, among other things, to comply with the minimum wage and overtime pay provisions of the FLSA. Under these circumstances, Wackenhut was specially alerted to its responsibilities under the FLSA at the time of the problems addressed in the instant suit.

In February 1984, in response to a complaint received by the DOL, Compliance Officer Edward Liburd of DOL's Wage and Hour Division commenced an investigation into the payrolls of Wackenhut's employees in the New York City area. Liburd initially examined the weekly payroll records available at defendant's New York office. From those records, he initially identified 5 employees who appeared not to have received the proper overtime pay and he requested the individual earnings histories for those employees. After verifying his conclusions as to those employees, Liburd made a list of approximately 190 employees who also appeared not to have received overtime pay. In June 1984, he presented the list to Wackenhut officials and requested that they conduct a self-audit, which they originally agreed to do, but later declined.

Liburd then requested and obtained earnings histories for the 190 employees he had identified; reviewing the records, he found one instance in which an employee was not paid the minimum wage and 145 instances in which security guards were not paid the additional half-time premium for hours worked in excess of 40 hours per week. Based on the earnings histories, he calculated that $16,301.02 in back wages was due to 146 security guards through the year 1984. At that time, the total number of employees in service in the New York City area was 450. At a final conference with two Wackenhut management officials in March 1985, Liburd discussed the viola-

tions and was assured that corrective measures would be taken.

Michael J. Simpson, Wackenhut's Vice-President for Management Information Services, testified that instead of "researching" Liburd's findings to verify whether they were correct, Wackenhut determined that as a matter of "dollars and cents," it would be less costly simply to make the payments requested. Thus, in October 1985, Wackenhut delivered to DOL checks totalling $16,301.02, payable to individual employees. These checks in time became stale, and in April 1986, Wackenhut mailed duplicate checks directly to the employees. Because some checks mailed were returned as undeliverable, defendant still possesses about $6000 in unpaid back wages.

At trial, defendant challenged the Secretary's proof of overtime wage violations. According to Simpson, the earnings histories upon which Liburd relied do not show the number of hours actually *worked* by an employee during a given week. Rather, they show the number of hours for which an employee was *paid* during a given week, so that the hours and pay listed in an earnings history for a particular week may include hours and pay erroneously omitted in a previous week. To determine the number of hours actually worked by an employee in a given week, it would be necessary to examine the installation time records or sign-in sheets for that employee. The installation time records, which form the basis for the payroll, are filled out each week for each employee by local area supervisors, using the sign-in sheets filled out by the employees on a daily basis at their work sites.

During trial, the Court ordered defendant to produce the records needed to determine whether the proper overtime was paid to its employees. In response, defendant produced installation time sheets for four employees identified by the Secretary. These installation time sheets indicated that the four employees did not receive overtime pay for hours worked in particular weeks; for three of the employees, there was no evidence that the failure to pay overtime was subsequently corrected. Some of these overtime wage violations occurred before, and some after, Liburd's final conference with Wackenhut management in March 1985. In the case of one of the employees for whom installation time records were produced, Wackenhut demonstrated that in some weeks he received more overtime pay than he was entitled to for that week, and that these payments were made to rectify earlier underpayments. Of the three weeks of underpayment identified by the Secretary, however, Wackenhut was only able to demonstrate that one week was corrected.[1] No proof of correction was offered with respect to the underpayment of any other employee.

Defendant offered two explanations for its failures to pay overtime: clerical errors and the failure of area supervisors to correctly total the overtime hours worked by employees who worked at multiple sites during a single week. Although it was the "rule rather than the exception" for guards to work at multiple sites during a week, Wackenhut had no specific system for ensuring that overtime hours were correctly totalled. Calculation of overtime was left to the New York area's three area supervisors, overseeing 35 accounts, who were responsible for sharing the information as to employees who worked at multiple sites during the week and for totalling their hours to determine how much overtime should be paid.

---

1. The Secretary showed that employee Winston Harris did not receive his overtime pay for 8 hours during the week ending August 18, 1985, 7 hours during the week ending August 11, 1985, and 7 hours during the week ending June 16, 1985. Wackenhut showed that Harris was paid an overtime premium for 13 hours during the week ending September 15, 1985, even though he did not work over 40 hours that week. A notation on an installation time sheet for that week showed that overtime was paid for 8 hours to correct the underpayment during the week ending August 11, 1985. Although Harris was also paid overtime for 8 non-overtime hours during week ending June 23, 1985, no evidence was offered to show that this overpayment was to correct the underpayment for the week ending June 16, 1985, which was identified by the Secretary.

Because Wackenhut employed this system of totalling its employees' hours, with limited staff working under time pressure, errors routinely resulted. During the period in question, Wackenhut had only three employees to prepare the payroll for approximately 450 guards. In reaction to Liburd's investigation of the New York area office, Wackenhut in November 1985 implemented a computer program to total automatically all overtime hours worked by each employee, including all hours worked at all sites in a given week. No evidence was offered of any overtime wage violations since implementation of this system.

### Discussion

The parties have stipulated that Wackenhut is an "employer," whose business constitutes an "enterprise" and who is "engaged in commerce or in the production of goods for commerce," as these terms are defined in the FLSA. 29 U.S.C. § 203(d), (s)(1), & (r). The parties' areas of disagreement are discussed below.

*1. Proof of Violations.*—Wackenhut challenges that the Secretary has met his burden of proof as to the 145 overtime violations which he initially sought to demonstrate on the basis of the guards' earnings histories. The Secretary maintains that the earnings histories present a prima facie case that the stated overtime violations occurred. For any particular week, an employee's earnings history shows that employee's "regular hours," "overtime hours," "overtime earnings," and "total earnings." Liburd noted an overtime wage violation wherever an employee earnings history listed hours worked in excess of 40 that were not compensated with the additional half-time premium due.[2]

■ Wackenhut argues that the earnings histories do not constitute prima facie proof of overtime wage violations because the hours listed in a particular week does not necessarily reflect hours actually worked in that week. It might be the case, defendant argues, that additional hours were listed in a particular week to make up for overtime hours not compensated in a prior week. In such a case, however, one would expect the additional overtime hours added to the later week to be matched by additional overtime pay. The only possible explanations for overtime hours not matched by overtime pay in a particular week are clerical errors resulting in too many hours being listed or a failure to pay overtime in that week. The question confronting this Court is whether it is the Secretary's burden to prove that the overtime hours listed are not inflated due to a clerical error and that the underpayment was never corrected in a subsequent week. Clearly the duty was upon the employer to keep accurate records reflecting an employee's regular and overtime hours.

In *Anderson v. Mt. Clemens Pottery Co.,*[3] the Supreme Court held that where an employer's records are inaccurate or inadequate, all an employee need offer to substantiate an FLSA claim is "sufficient evidence [to permit] a just and reasonable inference" as to the amount of his uncompensated work.[4] Under this rule, it is clearly Wackenhut's burden to prove that the overtime hours listed are incorrect because of a clerical error. Wackenhut also contends, however, that its records may contain evidence as to whether a particular underpayment was subsequently corrected; yet it is evidently no simple matter to determine whether such a correction was made. When Liburd offered Wackenhut the option of performing a self-audit, Wackenhut declined. According to the testimony of John Simpson, defendant determined, as already noted, that it would be less expensive to pay all claims of underpayment—totalling over $16,000—than to produce the records needed to prove no

---

**2.** Wackenhut failed to produce earnings histories at trial for all 145 employees. The Court thus relies upon Liburd's uncontradicted testimony that his previous review of the earnings histories showed that 145 employees received less overtime pay than the overtime hours listed for certain weeks.

**3.** 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

**4.** *Id.* at 687, 66 S.Ct. at 1192.

violations were committed. Given that Congress intended employers to be responsible for policing their own compliance with the FLSA, it is appropriate to place the burden of proving a payment correction upon the employer.

Officer Liburd apprised Wackenhut management at the time of his investigation that he was interested in determining whether overtime violations occurred. Although Wackenhut did not conceal the manner in which it maintained its payroll records, neither did it offer Liburd the additional records that it now claims are essential to a determination of whether underpayment took place. Although Wackenhut knew the nature of the evidence the Secretary would present at trial, it did not produce—except in the case of one employee—the additional records needed to prove correction of any underpayments.

■ Wackenhut's failure to maintain records that would permit an accurate determination as to whether underpayments have been corrected should not work to Wackenhut's advantage. Where an employer's records are maintained in such a way as to make it unreasonably burdensome to discover whether FLSA violations have occurred, a plaintiff need only establish those violations by presenting "sufficient evidence [to permit] a just and reasonable inference" of underpayment. In the instant case, the testimony of Wackenhut's own witness as to the expense of producing the required records suggests that application of the rule in *Anderson* is appropriate. The expense of keeping accurate records to establish compliance with the Act is no excuse for not keeping such records. The Secretary's demonstration based on Wackenhut's employee earnings histories permits a reasonable and just inference of failure to pay overtime; in the absence of

contradictory evidence, a finding of such violations is appropriate.

Based on employees' earnings histories, the Secretary has established a failure to pay overtime due to 145 employees. As to one of those employees, Wackenhut proved that it corrected the underpayment for one of three work weeks identified by the Secretary. Wackenhut has not disputed DOL's finding of one instance in which it failed to pay the minimum wage. As to the latter, it has produced no evidence that this failure was corrected.

■ *2. Statute of Limitations.*—Under section 6(a) of the Portal-to-Portal Act, 29 U.S.C. § 255(a), a two-year statute of limitations applies to FLSA actions, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." This provision has consistently been held to set forth not a substantive condition precedent to the maintenance of a cause of action, but a procedural limitation on relief that must be pleaded as an affirmative defense.[5] Wackenhut did not include a statute of limitations defense in its answer, did not make a motion to dismiss on statute of limitations grounds,[6] and remained silent when, at the start of trial, the Secretary informed the Court that defendant had failed to plead this affirmative defense. Wackenhut, in a post-trial brief, now argues that a two-year statute of limitations applies. Having failed to raise any statute of limitations defense in its answer and failing to press such a defense at trial, Wackenhut has waived that defense.

■ *e. Liquidated Damages.*—Sections 16(b) and (c) of the FLSA provide that any employer who violates section 7 of the Act shall be liable to the affected employee in the amount of unpaid compensation and "an additional amount of liquidated damages." 29 U.S.C. § 216(b) & (c). Such

---

**5.** *Mumbower v. Callicott,* 526 F.2d 1183, 1187 n. 5 (8th Cir.1975); *Hodgson v. Humphries,* 454 F.2d 1279, 1283–84 (10th Cir.1972); *Marshall v. American Motors Corp.,* 475 F.Supp. 875, 884–85 (E.D.Mich.1979).

**6.** In *Hartt v. United Construction Co.,* 655 F.Supp. 937, (W.D.Mo.1987) and *Shandelman v.*

*Schuman,* 92 F.Supp. 334 (E.D.Pa.1950), motions to dismiss on statute of limitations grounds were entertained despite the defendant's failure to plead the defense in its answer. In the instant case, no such motion was made. To raise the defense after trial is too late.

damages are not intended to be a penalty or a punishment, but rather, are intended to compensate for any losses a worker might suffer because of the wrongful retention of his pay.[7] Under § 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, employers may assert a good faith defense to the liquidated damages provision by showing "to the satisfaction of the Court" that (1) "the act or omission giving rise to such action was in good faith" and (2) "that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." If the defendant makes this showing, the Court may "in its sound discretion, award no liquidated damages or award any amount thereof not to exceed" that authorized by statute.

■ Wackenhut maintains that it acted in good faith and had "reasonable grounds for believing that its payroll practices as a whole were in full compliance with the act." As evidence of this, defendant demonstrated that (1) its vice-president in charge of payroll and billing periodically lectured to its managerial and supervisory employees on the importance of accurate and prompt compensation of employees; (2) the company uses the same data to bill clients as it uses to compensate employees, and thus has an interest in correctly totalling the hours worked by its employees; and (3) the number of overtime wage violations is only a small percentage of the total payroll transactions carried out by the company. Defendant also notes that subsequent to the investigation and violations alleged, it implemented a computer program that eliminates the human errors that caused the overtime wage violations.

Defendant's arguments, however, do not demonstrate the good faith or reasonable grounds required by § 260. The issue must be decided upon the facts as of the time the violations took place. Despite repeated instances in which DOL confronted Wackenhut with its failure to pay overtime—some of which involved the same kinds of errors at issue in this case—Wackenhut did not institute any mechanism to avoid committing such errors until after the investigation that led to this suit. Only then did Wackenhut implement a computer program to eliminate this persistent problem. Given DOL's repeated investigations, Wackenhut could neither reasonably conclude that its errors did not constitute violations or that its failure to modify the system that led to such errors was an omission made in good faith. Wackenhut thus has not met the burden of proof needed to avoid the imposition of liquidated damages.

■ *4. Prospective Injunctive Relief.* —The Secretary asks this Court to issue a nationwide prospective injunction pursuant to § 17 of the FLSA, 29 U.S.C. § 217, against further violation of the Act by Wackenhut. Whether to issue such an injunction is a matter left to the district court's discretion.[8] In such cases, a court must evaluate "the previous conduct of the employer and the dependability of his promises of future compliance."[9]

■ Prospective injunctive relief is not warranted. Such relief has been granted only where the defendant has engaged in some form of aggravated misconduct, such as making misleading or false reports to the Department of Labor,[10] refusing to maintain accurate records of pay and hours worked,[11] instructing employees to lie to investigators and forcing them to sign inac-

---

7. *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682 (1942); *Soler v. G & U, Inc.,* 628 F.Supp. 720, 724 (S.D.N.Y.1986).

8. *Wirtz v. Harper Buffing Mach. Co.,* 280 F.Supp. 376 (D.Conn.1968), *aff'd per curiam,* 60 Lab.Cas. para. 32,181 (2d Cir.1969).

9. *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 197 (5th Cir.), *cert. denied,* 463 U.S. 1207,

103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983); *Dunlop v. Davis,* 524 F.2d 1278, 1281 (5th Cir.1975); *Hodgson v. Penn Packing Co.,* 335 F.Supp. 1015, 1025 (E.D.Pa.1971); *Marshall v. Sam Dell's Dodge Corp.,* 451 F.Supp. 294 (N.D.N.Y.1978).

10. *Dunlop v. Davis,* 524 F.2d 1278, 1281 (5th Cir.1975).

11. *Wirtz v. Atlas Roofing Mfg. Co.,* 377 F.2d 112 (5th Cir.1967).

curate time records,[12] intentionally refusing to pay all of its employees at the overtime rate on the ground that clients did not reimburse the company at the higher rate,[13] failing to keep records for non-union employees, who were not paid at the required rate and who were paid only sporadically,[14] and deliberately making certain that violations would be difficult to detect.[15] Wackenhut's conduct does not display the flagrant indifference to the FLSA found in these cases.

The resolution of the issue is close. Wackenhut urges this Court not to grant the prospective injunction on the ground, among others, that the $16,000 due in back wages is minuscule as compared to the total payroll for its security guards in the New York City area during the period in question, which counsel estimates to have been over $12,000,000. These back wages may be minuscule as against the total but major in terms of what the individual employees were deprived of when they were not paid the overtime the law obligated Wackenhut to pay; whether small or large, this failure to pay violated the Act. On the other hand it can be argued that those violations were not deliberate or intentional even though they came under the rubric of "wilful" violations not committed in "good faith," as those terms are defined by applicable authority. In addition, as noted, to assure accuracy of records reflecting amounts due to employees under the Act, Wackenhut has installed a sophisticated computer system designed to assure that each employee's hours of work, whenever and wherever worked, are accurately recorded so that his or her hourly rate and overtime hours are properly computed. This will eliminate the problems involved in this action, which were in large measure due to inadequate staff. Upon a balancing of all factors in favor of and against the requested relief, the Court concludes that prospective injunctive relief is not warranted and that the interest of the employees as well as the public interest in the enforcement of the FLSA will not be injured by such denial.

### Conclusions

Defendant is ordered to (1) forward to the Secretary all back wages not previously distributed to employees and an equivalent sum in liquidated damages; and (2) send, by registered or certified mail, to each employee previously in receipt of checks for back wages, checks for liquidated damages in an amount equal to the back wages paid. The order may also contain an appropriate provision with respect to the single week of underpayment which Wackenhut demonstrated it had corrected and with respect to deposit of funds due employees whose present whereabouts cannot be determined. Submit order on five days' notice of settlement.

So Ordered.

---

12. *Marshall v. Brunner,* 500 F.Supp. 116 (W.D. Pa.1980), *aff'd in part, rev'd in part on other grounds,* 668 F.2d 748 (3d Cir.1982).

13. *Donovan v. Sovereign Sec. Ltd.,* 25 [BNA] WH Cas. 1222 (E.D.N.Y.1982), *rev'd on other grounds,* 726 F.2d 55 (2d Cir.1984).

14. *Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F.Supp. 860 (S.D.N.Y.1984).

15. *Marshall v. Burger King Corp.,* 504 F.Supp. 404 (E.D.N.Y.1980).