Lynn MARTIN, Secretary of Labor, United States Department of Labor, Plaintiff–Appellee,

v.

FUNTIME, INC., a Corporation, Defendant–Appellant.

No. 91–3595.

United States Court of Appeals, Sixth Circuit.

Argued April 6, 1992.

Decided April 24, 1992.

Ellen R. Edmond (argued and briefed), William J. Stone, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., Benjamin T. Chinni, Office of Sol., U.S. Dept. of Labor, Cleveland, Ohio, for plaintiff-appellee.

James D. Kurek (argued and briefed), Buckingham, Doolittle & Burroughs, Akron, Ohio, for defendant-appellant.

Before NELSON and NORRIS, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Appellant, Funtime, Inc., appeals a judgment for the plaintiff, the Secretary of Labor, finding violations of the wage and hour provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 212, 215(a)(4), governing child labor.

## I.

Appellant, Funtime, Inc., is an Ohio corporation with its principal place of business in Aurora, Ohio. Funtime owns and operates three amusement parks—Geauga Lake Park located in Aurora, Ohio; Wyandot Lake Park located in Powell, Ohio; and Darien Lake Park located in Darien Center, New York.

Funtime employed numerous 14 and 15 year-old children in various occupations throughout the parks during the 1989 and 1990 operating seasons. These children were regularly required to work more hours than the Fair Labor Standards Act ("FLSA") permitted.

In the summer of 1985, Funtime's operations at Wyandot Lake Park came under investigation by the Wage and Hour Division of the United States Department of Labor. A compliance officer found that the park was employing children in violation of the FLSA. On August 13, 1985 the compliance officer discussed her findings with Mr. Ed McHale, the park's general manager, providing him with written results of the inquiry. As a result of this 1985 investigation, Funtime was assessed a

civil money penalty. Joint Appendix at 814.

Five years later, in March 1990, another Wage and Hour compliance officer began investigating Funtime's operations at Geauga Lake Park. During this investigation, the officer reviewed the park's employment records for the 1988 and 1989 seasons. He was given a list of the names of the 14 and 15 year-olds employed at the park. The officer transcribed the park's employment figures, compiling a summary of all the hours worked and the ages of the employees. In order to verify the ages, the compliance officer compared the dates of birth contained on the park's records with dates he obtained from the childrens' school records.

In May 1990, the compliance officer notified Geauga Lake Park that as a result of his investigation he had discovered that 135 children had been employed in violation of the FLSA's child labor provisions during the 1988 and 1989 seasons. In response, the park attempted various corrective measures to prevent further violations.

In September 1990, the same compliance officer revisited Geauga Lake for a follow-up investigation to determine whether Funtime had come into compliance with the FLSA. The compliance officer conducted a similar review of the park's employment records. In that investigation, the officer found 22 additional violations. The results of the investigation were transmitted to the park's director of human resources, who challenged the validity of the officer's computations. Nevertheless, the park agreed to take further preventive measures, including the installation of an automatic time keeping system, and the reduction in the total number of minors employed.

In July 1990, another Wage and Hour compliance officer began investigating Funtime's Darien Lake amusement park. The officer reviewed the park's employment records, and prepared a transcription of the information found on the personnel records which indicated that child labor violations had occurred. The ages of all minor employees were verified by comparing the dates of birth that appeared on the park's records with the dates that appeared on certain proof of age certificates issued by New York schools.

The investigation of Darien Park continued in November 1990. The investigating officer reviewed the park's employment records for the 1988 and 1989 seasons. The ages of the children were verified and the records were transcribed by the officer into a summary which revealed that 230 minors were employed in violation of the FLSA.

In response, the park took various steps to avoid future child labor violations, recognizing however the "problems the park had encountered with minors using various efforts to avoid the restrictions placed on them." Appellant's Brief at 11. Funtime alleges that the Wage and Hour investigators "never mentioned the investigation at Geauga Lake to the Darien Lake representatives, and the Darien Lake representatives never indicated that they were aware of the Geauga Lake investigation." *Id.* at 10. Presumably, Funtime believes that being unaware of these other investigations relieved them of the duty of seeking more severe corrective measures.

In September 1990 a Wage and Hour compliance officer continued the investigation of Funtime's Wyandot Lake Park, reviewing their employment records for the 1989 and 1990 seasons. The officer made photo copies of the park's payroll and time records, which revealed that 82 minors were employed in violation of the FLSA. The ages of the minor employees were verified using school records.

In October 1990 Funtime was notified of the violations which occurred at Wyandot Lake. However, Wyandot Lake's director of personnel, Keith M. Swider, who was also notified of these violations, claimed to be unaware of the violations which were earlier uncovered by the 1985 investigation. Swider was not employed at the park at that time. Swider testified that in the middle of the summer of 1990 he was informed by Wyandot Lake's general manager that Funtime's Geauga Lake Park had been investigated that spring; however, the compliance officer never mentioned this investi-

gation to him at the time that his park was being investigated. Apparently, Funtime now argues that this lack of knowledge precludes a finding that the 1989 and 1990 violations were willful or intentional.

In response to the above incidents, the Secretary of Labor filed a complaint against Funtime in the United States District Court. The Department of Labor sought injunctive relief against Funtime's Geauga Lake, Wyandot Lake and Darien Center parks. On March 27 and 28, 1991 the district court conducted a bench trial in this case. On April 24, 1991 the district court issued its Findings of Fact and Conclusions of Law, finding that during the 1990 season, each of the three parks owned by Funtime had employed minors in violation of the FLSA's child labor provisions, and that the violations had been substantial in number. Joint Appendix at 19. The court found that all of the violations had been properly investigated and verified. The district court also concluded that, because the violations continued long after the 1985 investigation of Wyandot Lake, Funtime's child labor violations were willful. *Id.* at 20. The court thus believed that this indicated that it was likely that the violations would continue to occur. It rejected Funtime's argument that its three parks were separate entities and thus that the officials at each park had no way of knowing that the other parks had been investigated. *Id.* at 23.[1] Accordingly, the district court held that the Secretary of Labor was "entitled to an injunction restraining [Funtime], its agents, and all other persons acting in concert with them" from violating the provisions of 29 U.S.C. §§ 212, 215(a)(4). *Id.*

Funtime filed a timely notice of appeal from the district court's judgment.

## II.

Funtime first argues that the district court abused its discretion in issuing an injunction against Funtime. For the fol-

lowing reasons, we believe that injunctive relief was proper in this case. Section 17 of the Fair Labor Standards Act, codified as amended at 29 U.S.C. § 217, authorizes a court to enjoin violations of certain of the Act's provisions. Among those is section 12(c), codified as amended at 29 U.S.C. § 212(c), which prohibits the employment of "oppressive child labor," which is defined to mean "a condition of employment under which ... any employee under the age of sixteen years is employed by an employer ... in any occupation." 29 U.S.C. § 203(*l*)(1). Section 203(*l*) also authorizes the Secretary of Labor to promulgate regulations defining what shall constitute oppressive child labor of children between the ages of 14 and 16 years. As such, regulations adopted pursuant to this authority restrict the hours during which a child may work. *See* Child Labor Regulation No. 3, 29 C.F.R. §§ 570.31–.49 (1991). The district court concluded that the appellant committed numerous violations of the above provisions, and thus the primary question on appeal is whether the district court properly ordered injunctive relief.

■ "The issuance of an injunction under the Fair Labor Standards Act is addressed to the reasonable discretion of the trial judge." *Wirtz v. Flame Coal Co.*, 321 F.2d 558, 560 (6th Cir.1963). The exercise of discretion is not unbridled, *Dunlop v. Davis*, 524 F.2d 1278, 1280 (5th Cir.1975), and "in exercising its discretion the court must give 'substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private, right.'" *Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir.1987) (quoting *Marshall v. Chala Enterprises, Inc.*, 645 F.2d 799, 804 (9th Cir.1981)).

■ The purpose of issuing an injunction against future violations is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations. *Big Bear*, 825 F.2d at

---

1. Funtime does not have a centralized corporate personnel function; however, the general managers at each amusement park and the corporate officers meet periodically. Nevertheless, appellant claims that the various parks do not share personnel information. Appellant's Brief at 14.

1383; *Dunlop*, 524 F.2d at 1280. Prospective injunctions are essential because the cost of noncompliance is placed on the employer, *id.*, which lessens the responsibility of the Wage and Hour Division in investigating instances of noncompliance. *Dunlop*, 524 F.2d at 1280. The imposition of an injunction is not punitive, nor does it impose a hardship on the employer "since it requires him to do 'what the Act requires anyway—to comply with the law.'" *Id.* at 1281; *see, e.g., Wirtz*, 321 F.2d at 561 (standard of public interest is not measured by the possible consequences which may befall the employer in complying with the law, but by the existence of substandard labor conditions).

■ In *Dunlop*, the Fifth Circuit held that "two factors [are] properly ... considered in determining whether a permanent injunction should be granted." *Dunlop*, 524 F.2d at 1281. These include: (1) the previous conduct of the employer; and (2) the dependability of his promises for future compliance. *Id.* Furthermore, the court must look at evidence of current compliance; however, "current compliance alone, particularly when achieved by direct scrutiny of government, is not a sufficient ground for denying injunctive relief." *Big Bear*, 825 F.2d at 1383 (citing *Dunlop*, 524 F.2d at 1281); *Marshall v. Lane Processing, Inc.*, 606 F.2d 518, 519 (8th Cir.1979), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980).

■ Appellant argues that the injunction was improper because Funtime had taken "substantial steps to prevent child labor violations" and that it promised to "eliminate future violations through the imposition of additional, significant procedures" demonstrating "the likelihood of future compliance." Appellant's Brief at 18–20. However, as indicated above, an employer's efforts at current compliance, even if successful, are not sufficient grounds to deny injunctive relief. *Dunlop*, 524 F.2d at

1281. Rather, a court's primary concern is whether the violations are likely to reoccur in the future. *Big Bear*, 825 F.2d at 1383. "A dependable, bona fide intent to comply, or good faith coupled with extraordinary efforts to prevent recurrence," are factors which weigh against an injunction. *Id.* However, "an employer's pattern of repetitive violations or a finding of bad faith are factors weighing heavily in favor of granting a prospective injunction." *Id.* (citing *Dunlop*, 524 F.2d at 1281).

In the present case, we believe that the district court did not abuse its discretion in ordering an injunction. First, the facts demonstrate that appellant Funtime exercised less than good faith in attempting to comply with the FLSA. The investigation began in 1985, and Funtime was assessed a civil money penalty on September 25, 1985. Nevertheless, the violations continued into the 1989 and 1990 seasons. Furthermore, a July 1990 investigation of Geauga Lake Park disclosed a substantial number of violations. Funtime was notified of its lack of compliance. However, a follow-up investigation conducted in November 1990 revealed that Geauga Lake continued to employ minors in violation of the FLSA even though their operations had been subjected to the scrutiny of the Department of Labor. These failures to comply after initial investigations do not demonstrate "likelihood of future voluntary compliance" on Funtime's part. *Dunlop*, 524 F.2d at 1281. Funtime's attempt to avoid the shadow of bad faith by arguing that its parks were separate entities, and that the general manager of Wyandot Lake in 1990 was unaware of the violations which occurred in 1985, is unavailing. The penalty in 1985 was assessed against Funtime, and the present suit is against Funtime. Since Funtime had, or should have had, knowledge of this original violation, it is irrelevant that the manager of its Wyandot Lake Park had no such knowledge.[2]

---

**2.** Even if the entities' personnel departments were separately run, there were regular meetings of the parks' general managers and corporate officers. Joint Appendix at 175. Therefore, even if knowledge of the parks' general managers were required, we believe that such

knowledge should have come from the corporate headquarters, which must have known of the 1985 violations since it paid the fine. *See Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir.1969) (employer held to standard of whether it had "the opportunity through reason-

In addition, an employer's responsibility for child labor violations approaches strict liability, and an employer cannot avoid liability by arguing that its supervisory personnel were not aware of the violation, or by simply adopting a policy against employing children in violation of the Act. *Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 328 (8th Cir.1945). Therefore, we find that the employer was put on notice in 1985 that it was not complying with the FLSA, and thus it is of little value to argue, at this juncture, that the current violations came as a complete surprise.

Secondly, Funtime committed a substantial number of violations of the Act after the 1985 investigation. If the violations were merely isolated, then Funtime could more plausibly argue "good faith." However, in this case there were hundreds of additional violations occurring after the 1985 investigation. Under the present circumstances, the district court was justified in doubting whether Funtime would comply in the future, because it failed to comply after earlier being sanctioned. Therefore, Funtime's recent attempts to guarantee compliance came too late, and we find Funtime's promises of future compliance were not sufficient "to convince the district court that there is no reasonable probability of a recurrence of the violation," *Marshall v. Van Matre*, 634 F.2d 1115 (8th Cir.1980). Thus issuance of an injunction to assure compliance in this case does not constitute an abuse of discretion. *Goldberg v. Kickapoo Prairie Broadcasting Co.*, 288 F.2d 778, 782 (8th Cir.1961) ("[W]here the evidence clearly shows ... the likelihood, indeed, the virtual certainty of future violations, a decision denying an injunction will be reversed.").

### III.

■ Funtime next argues that even if the district court applied the proper standard in determining whether an injunction was appropriate, the judgment should nevertheless be invalidated because the court's conclusion rested on inadmissible evidence. Funtime contends that the transcriptions and summaries of its personnel records, introduced by the Department of Labor, were hearsay and violated the Best Evidence Rule, Fed.R.Evid. 1002.

The district court, over Funtime's hearsay objection, admitted the summaries of personnel records under Fed.R.Evid. 803(8)(C), concluding that they constituted investigative reports of a public agency not excluded by the hearsay rule. Funtime also objected on Best Evidence grounds, arguing that the summaries were not trustworthy. However, the district court felt that this case did not present a Best Evidence question, instead basing its admission solely on the Fed.R.Evid. 803(8)(C) exception. Joint Appendix at 39–40. We agree that the district court properly admitted the summaries, however, we find that its basis for admitting this evidence was improper. Instead, we believe that the admissibility of these documents hinges exclusively on Fed.R.Evid. 1006.

Fed.R.Evid. 1006 provides:

The contents of voluminous writings ... which cannot conveniently be examined in court may be presented in the form of a ... summary. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

Fed.R.Evid. 1006. This rule provides an exception to the "Best Evidence Rule" which ordinarily requires the proponent, when attempting to prove the content of a document or writing, to produce the original. Fed.R.Evid. 1002. As an initial matter, there is little doubt that Rule 1006 applies to the present facts as it was not disputed that Funtime's original personnel records were voluminous.

"The admission of summaries under Rule 1006 is committed to the sound discretion of the trial court." *United States v. Campbell*, 845 F.2d 1374, 1381 (6th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 248 (1988). Under Rule 1006, the summary must be "accurate, authentic and properly introduced before it may be

able diligence to acquire knowledge" of child labor violations.).

**116**

admitted into evidence." *United States v. Scales*, 594 F.2d 558, 563 (6th Cir.), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979). Funtime contends that the district court erred because the summaries themselves were hearsay, and thus not admissible. The district court admitted the summaries under Fed.R.Evid. 803(8)(C), however Funtime argues that that hearsay exception does not apply here. Although we agree with Funtime that Fed. R.Evid. 803(8)(C) was not properly invoked under these facts, we find that its hearsay objections have no merit, and that the summaries were nevertheless admissible.

"Commentators and other courts have agreed that Rule 1006 requires that the proponent of the summary establish that the *underlying documents* are admissible in evidence." *United States v. Johnson*, 594 F.2d 1253, 1256 (9th Cir.) (emphasis added), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 376 (1979); *United States v. Smyth*, 556 F.2d 1179, 1184 (5th Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977); *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir.), *cert. denied*, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977). "Thus, if the original materials contain hearsay and fail to qualify as admissible evidence under one of the exceptions to the hearsay rule" the summary based on that material is inadmissible. *Johnson*, 594 F.2d at 1256. *Accord Scales*, 594 F.2d at 562 ("If the [underlying] records themselves could have been admitted to show [their contents], there appears to be no reason why Rule 1006 would not apply to a summary of their contents."). Therefore, the proper inquiry is whether Funtime's personnel records fall within a hearsay exception and not whether there is some independent hearsay justification for admitting the summaries themselves.

In this regard, it is certain the personnel records would be admissible under Fed. R.Evid. 803(6) as business records. The records in this case were compiled by Funtime or its employees; were kept in the course of a regularly conducted business activity, i.e. personnel management; and, it was the regular practice of Funtime to keep such records. Therefore, we find that these employment records would be admissible under the business records exception, thereby making summaries of their contents admissible by virtue of Rule 1006.

The inquiry conducted by the district court under Rule 803(8)(C) was not necessary, it being likely that the underlying documents were admissible under Rule 803(6). Any hearsay problems are satisfied by concluding that the underlying records themselves are admissible, without further inquiry into whether the summaries of those records are independently justifiable under a hearsay exception. Therefore, all that remains to be established is that the summaries themselves were accurate. *Scales*, 594 F.2d at 562.

The district court held that it was "clear" that the summaries were reliable. Joint Appendix at 158–59. We agree. The records were summarized by Wage and Hour compliance officers who testified to their accuracy and authenticity. Joint Appendix at 44–45, 59–60, 103. Furthermore, if the summaries were inaccurate, Funtime, who was in possession of the originals, could have produced them to prove the inaccuracies. Funtime, however, points out specific discrepancies, such as the government's practice of including the employees' meal periods in calculating total hours worked, and improperly counting the hours of one employee who was over 18. Given the large total number of violations committed by Funtime, we believe that one or two computational errors would have a negligible effect on the reliability of the summaries as a whole. If the errors had been as significant as Funtime suggests, it could have produced the originals, thereby neutralizing any unfavorable consequences which would flow from their introduction into evidence. Therefore, we hold that the summaries were properly admitted under Rule 1006, and Funtime's challenges based on Rule 803(8)(C) are without merit.

IV.

For the foregoing reasons, the district court's decision is hereby AFFIRMED.