Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

FASHION HEADQUARTERS, INC. and Paul Cascio, Individually and as President of Fashion Headquarters, Inc., Defendants.

No. 97 Civ. 8806(SHS).

United States District Court,
S.D. New York.

Feb. 5, 1998.

Louis De Bernardo, U.S. Department of Labor, New York City, for Plaintiff.

Eric D. Witkin, Benetar Bernstein Schair & Stein, New York City, for Defendants.

## OPINION and PRELIMINARY INJUNCTION

STEIN, District Judge.

The Secretary of Labor has brought this action seeking injunctive relief restraining defendant Fashion Headquarters and its President, Paul Cascio, from violating section 215(a)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(1). Fashion Headquarters is a women's garment manufacturer which, at least in certain instances, contracts its production requirements to other entities. Section 215(a)(1) of the FLSA prohibits anyone from transporting or selling "hot goods," which are goods produced in violation of the minimum wage or overtime provisions of the FLSA, 29 U.S.C. §§ 206 and 207. Section 217 of the FLSA provides that the "district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title." 29 U.S.C. § 217.

The Secretary of Labor also seeks to require defendants to take affirmative steps to ensure future compliance with the FLSA, including conducting unannounced monitoring visits to every contractor that produces goods for Fashion Headquarters, keeping and maintaining records of all monitoring activities by defendants of their contractors, and requiring each contractor to execute an Employer Compliance Program ("ECP") designed by the Department of Labor.

Plaintiff, seeking both the prohibitory and mandatory relief described above, has now moved for a preliminary injunction. Defendants contend that no preliminary injunction should issue because the Secretary has not shown irreparable harm and because the equities and the balance of hardships weigh against injunctive relief. Defendants also maintain that the injunction sought by the Secretary of Labor is overbroad, and that the heightened standard for the granting of mandatory relief cannot be met.

### The Standard To Be Applied

Plaintiff has established her entitlement to a preliminary injunction. Pursuant to *Jackson Dairy v. H.P. Hood & Sons,* 596 F.2d 70 (2d Cir.1979), a party seeking injunctive relief must demonstrate that it will suffer irreparable harm in the absence of injunctive relief, and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the preliminary relief. *Id.* at 72.

Defendants have cited authority that a heightened showing is required when the relief sought is mandatory in nature, i.e. when "the relief sought is more than the preservation of the status quo." *SEC v. Unifund SAL,* 910 F.2d 1028, 1039 (2d Cir. 1990). Pursuant to such a heightened standard, the Secretary "should be obliged to make a more persuasive showing of [her] entitlement to a preliminary injunction the more onerous are the burdens of the injunction [she] seeks." *Id.* The Court, in such a case, "should require a more substantial showing of likelihood of success, both as to violation and risk of recurrence" whenever

mandatory relief is sought. *Id.* More recently, the Second Circuit has characterized this heightened standard as requiring a "clear showing that the moving party is entitled to the relief requested" or a showing that "extreme or very serious damage will result from a denial of preliminary relief." *Malkentzos v. DeBuono*, 102 F.3d 50, 54 (2d Cir. 1996) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985)).[1]

*Irreparable Harm*

■ The Secretary has very much made a "clear showing" that irreparable harm will ensue if her motion is not granted. One of the purposes of the FLSA is to prevent the introduction of hot goods into the stream of commerce. *See Citicorp Industrial Credit v. Brock*, 483 U.S. 27, 36–37, 107 S.Ct. 2694, 97 L.Ed.2d 23 (1987). Because hot goods are produced more cheaply, they provide a competitive advantage to those who violate the FLSA, and a comparative disadvantage to law-abiding manufacturers and distributors. Moreover, Congress has found that the trade in hot goods is "detrimental to the maintenance of the minimum standard living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The U.S. Supreme Court has quoted President Franklin D. Roosevelt's statement that hot goods "pollute the channels of interstate trade." *Citicorp*, 483 U.S. at 36 n. 8. In sum, once such goods are introduced into the stream of commerce, the harm to both workers and the "free flow" and "fair marketing of goods in commerce" cannot be undone. *See* 29 U.S.C. § 202(a).

*Likelihood of Success On The Merits*

■ The Secretary has also shown a clear likelihood of success on the merits of

her suit. The court, in deciding whether to grant an injunction, may consider the defendants' past non-compliance with the FLSA, the defendants' "moral and business responsibility," and the dependability of defendants' promises of future compliance. *Wirtz v. Harper Buffing Machine*, 280 F.Supp. 376 (D.Conn.1968); *see also Brock v. Wackenhut*, 662 F.Supp. 1482, 1488 (S.D.N.Y.1987) (court must evaluate previous conduct of employer and dependability of promises of future compliance) (citations omitted). Present compliance with the FLSA does not preclude injunctive relief. *Brennan v. Carl Roessler, Inc.*, 361 F.Supp. 229, 235 (D.Conn.1973); *Walling v. J. Friedman & Co., Inc.*, 61 F.Supp. 325, 326 (S.D.N.Y.1945). In determining whether there have been past violations of the FLSA, and the extent to which those violations counsel in favor of injunctive relief, this Court is mindful that knowledge by the defendants that goods they shipped were in fact produced in violation of the minimum wage and overtime provisions FLSA is not necessary to find a violation of section 215(a) of the Act. *Walling v. J. Friedman & Co.*, 61 F.Supp. 325, 326 (S.D.N.Y. 1945); *see also Mitchell v. Mormando Bros. Co.*, 134 F.Supp. 707, 709 (S.D.N.Y.1955) ("the element of 'good faith' is immaterial in proceedings under the [FLSA]").

The Secretary has established Fashion Headquarters' past non-compliance and past failure to respond to Department of Labor notices. In April of 1997, a Department of Labor investigator repeatedly notified Fashion Headquarters that one of its contractors, High Quality Fashion, had violated minimum wage and overtime provisions of the FLSA, and asked Fashion Headquarters not to ship

---

**1.** There is some question whether, in cases brought pursuant to the FLSA, the typical standard for preliminary injunctive relief applies. Some authority suggests that in an FLSA action, a preliminary injunction is appropriate where "substantial violations of … the Act [are] made out 'by the fair weight and preponderance of the evidence.'" *Mitchell v. Mormando Bros. Co., Inc.*, 134 F.Supp. 707, 709 (S.D.N.Y.1955) (quoting *Durkin v. Mercer Water Co.*, 112 F.Supp. 656, 658 (D.Pa.1953), *aff'd sub nom. Mitchell v. Mercer Water Co.*, 208 F.2d 900 (3d Cir.1953)).

Similarly, there is authority that the *Jackson Dairy* test is modified where a governmental

agency seeks a preliminary injunction pursuant to statutory authority. *See SEC v. Unifund SAL*, 910 F.2d 1028, 1035, 1040 (2d Cir.1990). For example, plaintiff contends that a showing of irreparable harm is unnecessary where a governmental agency seeks to enjoin the violation of a statute to vindicate public interests. *Id.* at 1035. These issues need not be addressed in light of the holding of this opinion that the most stringent of the tests—the *Jackson Dairy* standard for prohibitory relief as well as the heightened standard for granting mandatory relief—are met.

any garments produced by High Quality Fashion in violation of the FLSA. The investigator received no response. (Declaration of Johanna Bauer, ¶ 4). In June of 1997, another Department of Labor investigator notified Fashion Headquarters that another of its contractors, O.K. Group Corp., was violating the FLSA, and requested that Fashion Headquarters not ship any hot goods produced by O.K. Group. Again, the investigator received no response. (Bauer Decl., ¶ 5). In addition, Fashion Headquarters was specifically notified, in late October of 1997, that MSL Sportswear and Laura & Sarah Sportswear, two more of defendants' contractors, were producing hot goods and that the Department had reason to believe that Fashion Headquarters had shipped some of these hot goods. (Bauer Decl., ¶¶ 9–17).[2] The underlying FLSA violations consisted of MSL's and Laura & Sarah's alleged failure to pay their employees any wages for eight weeks during September, October and November of 1997, and their failure to pay overtime wages since at least May 1, 1997. (Bauer Decl., ¶ 7). Defendants, in their opposition papers, do not address plaintiff's likelihood of success on the merits and do not contest the allegations described above.

Shipment of goods produced by employees who went unpaid for eight workweeks is a substantial violation of the FLSA. Defendants have submitted an affidavit by Paul Cascio stating that defendants "have not knowingly violated § 15(a)(1) of the [Fair Labor Standards] Act and have no intention to do so," but conceding that "it now appears there may have been inadvertent limited shipment of goods made by MSL and Laura & Sarah Sportswear, Inc. on or before November 5, due in part to the fact that plaintiff did not initially make clear that Laura & Sarah Sportswear, Inc. made goods we had listed under the name 'L & S.' " (Affidavit of Paul Cascio, ¶¶ 3, 5). Defendants do not contest that they are currently in possession of goods manufactured by MSL and Laura

& Sarah in violation of the FLSA or that they did, in the past, ship goods produced in violation of the FLSA. Defendant Cascio's statement that defendants do not intend to violate knowingly section 15(a)(1) of the FLSA, given the admission that violations have occurred, does not provide the Court with adequate assurance of future compliance. Defendants' statement that any violation of the FLSA by the shipping of goods manufactured by Laura & Sarah Sportswear was inadvertent is unavailing; as discussed above, knowledge that goods were manufactured in violation of the Act is not a prerequisite for finding a violation of the "hot goods" provision of the Act. Defendants' admission that they may have inadvertently shipped goods manufactured by Laura & Sarah Sportswear, even after defendants received notice that Laura & Sarah Sportswear was not in compliance with the FLSA, rather than weighing against injunctive relief, indicates the need for more vigilant FLSA compliance efforts on defendants' part.

Plaintiff also has submitted evidence, derived from a 1997 Department of Labor survey, that approximately 63 percent of apparel contractors in New York City are in violation of the minimum wage and overtime provisions of the FLSA. This evidence indicates the insufficiency of defendants' mere promises not to violate the FLSA knowingly and highlights the need for defendants to take steps to attempt to ensure that their contractors are not among the large percentage of violators.

The substantial and unrebutted evidence presented to the Court is ample to support the conclusion that plaintiff is clearly likely to succeed on the merits of her suit for a preliminary injunction.

*Summary*

The irreparable harm which would be wrought by the introduction of hot goods into the stream of commerce, the past viola-

---

2. Ninety employees of MSL Sportswear and Laura & Sarah Sportswear have sued MSL and Laura & Sarah, among other defendants, in this Court, alleging that they had not been paid wages due them. *Zhou v. MSL Sportswear et al.* (97 Civ. 8368) (1997). On November 12, 1997, in light of substantial evidence adduced, this Court issued a temporary restraining order in that action prohibiting MSL and Laura & Sarah from removing equipment from their factory in lower Manhattan.

tions of the FLSA by defendants, defendants' failure to respond to prior notices by the Department of Labor that defendants' contractors have violated the FLSA, the undependability of defendants' statement that it does not intend to violate the FLSA knowingly, and the better than 50 percent probability that any apparel contractor in New York City is in violation of the FLSA, all counsel in favor of prospective injunctive relief.

*The Terms Of The Injunction*

■ However, the injunction sought by plaintiff is too vague and too broad. In *Hodgson v. Corning Glass Works*, 474 F.2d 226 (2d Cir.1973), *aff'd*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), the Second Circuit rejected a "sweeping injunction, broadly incorporating the words of the Act," similar to the one sought by the Department here. As the *Corning* court noted, quoting *NLRB v. Express Publishing Co.*, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930 (1941), "the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he should at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged." *Corning* at 236–37. A more narrowly tailored injunction is appropriate here. This narrower injunction is intended to force defendants to take steps to ensure their contractors' compliance with the FLSA without subjecting defendants to contempt for any violation, no matter how slight, and regardless of any steps defendants may have taken to avoid it.

Accordingly, for the reasons set forth above, it is hereby ordered that during the pendency of this action,

1. Defendants Fashion Headquarters, Inc. and Paul Cascio, their officers, agents, servants, employees, and all persons acting or claiming to act in their behalf and interest are enjoined and restrained from violating the provisions of section 215(a)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(1), in any of the following manners: Defendants shall not transport, offer for transportation, ship, deliver, or sell in commerce, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods produced by MSL Sportswear, Laura & Sarah Sportswear (a/k/a L & S Sportswear), MF Fashion, Inc., or any other contractor as to which the U.S. Department of Labor notifies defendants in writing that it has a good faith basis to believe the employees of which were employed in violation of 29 U.S.C. § 206 or § 207.

2. Defendants shall review with the owners or officers of each contractor from which they purchase goods (or which provides services in the production of goods to defendants), each of the following, prior to entering into any purchase for services or work on goods:

a. the terms of this Order;

b. the economic feasibility of the proposed price terms in light of the requirements of the minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206 and 207;

c. the contractor's willingness and ability to understand and comply with the minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206 and 207; and

d. the contractor's obligation to inform defendants immediately if it is unable to meet the minimum wage and overtime requirements of the FLSA, 29 U.S.C. §§ 206 and 207.

3. Defendants shall require that each contractor from which they purchase goods (or which provides services in the production of goods to defendants) make its payroll records available for inspection by defendants upon request. Where defendants have reason to believe one of their contractors is violating the FLSA, defendants shall review that contractor's payroll records for FLSA compliance.

4. Defendants shall obtain a written assurance from each contractor from which they purchase goods (or which provides services in the production of goods to defendants), that:

a. the contractor is aware of and understands the provisions of 29 U.S.C. §§ 206 and 207, that the review described in paragraph 2 above has taken place;

b. the contractor will permit inspection of its payroll records upon request by defendants; and

c. the goods it has produced for defendants have been produced in compliance with the provisions of 29 U.S.C. §§ 206 and 207.

The written assurance shall be signed by an owner or officer of each contractor from which defendants purchase goods (or which provides services in the production of goods to defendants).

5. With regard to each contractor from which defendants purchase goods or which provides services in the production of goods to defendants, defendants shall keep and maintain complete records of all transactions as follows:

a. a copy of any written contract;

b. records that identify each purchase made and the essential terms of each purchase, including purchases not yet completed as of the date of this Order;

c. the executed documents required by paragraph 4 above.

6. Defendants shall respond within three business days to any requests by the Department of Labor for records maintained pursuant to paragraphs 4 and 5 above.

7. Whenever defendants find any contractor(s) in violation of the minimum wage and overtime requirements of the FLSA, defendants shall immediately:

a. notify the Department of Labor; and

b. refrain from any shipment or sale of goods affected by such violations until the Department of Labor lifts any objections to such shipment.

8. The requirements of this Order are not to be construed to diminish any obligations

imposed upon defendants by the FLSA or otherwise by law.

SO ORDERED.